**In re Stephen Lee BATES, Debtor.**

**Bankruptcy No. 182–03484.**

United States Bankruptcy Court,
M.D. Tennessee.

Sept. 28, 1983.

N. Houston Parks, Trabue, Sturdivant & DeWitt, Columbia, Tenn., for FDIC, Receiver for Hohenwald Bank and Trust Co.

L. Bruce Peden, Cain, Moore & Peden, Columbia, Tenn., for debtor.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on the debtor's application to redeem a 1976 Checkmate boat pursuant to 11 U.S.C. § 722 by paying the Federal Deposit Insurance Corporation (hereinafter "FDIC") $1,500.00, the alleged amount of FDIC's secured claim.[1] FDIC has objected to this application on the basis that it has a secured claim in the full value of the boat, which is $4,000.00. Upon consideration of the evidence presented at the hearing, the briefs of the parties, exhibits, stipulations and the entire record, this court concludes that the amount of the disputed secured claim is $4,000.00, the fair market value of the boat, and therefore the debtor's application to redeem the boat by paying FDIC $1,500.00 must be denied.

The following shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The only factual dispute before the court is the actual amount of FDIC's secured claim in the debtor's boat, which FDIC possesses through its status as receiver for Hohenwald Bank & Trust Company (hereinafter "Hohenwald Bank").

The debtor signed a promissory note with ohenwald Bank on November 4, 1978, whereby he agreed to pay the bank $6,181.92 over a period of 48 months in return for a loan in the amount of $4,985.46. As collateral for this note, the bank received a security interest in the debtor's Checkmate boat, Mercury motor and Tennessee trailer. The note contained what is commonly referred to as a "dragnet clause" which provided in relevant part as follows:

"The undersigned Borrower hereby grants to the Secured Party above, a Security Interest in the following described property . . . to secure payment to the Secured Party at the address stated on this Note and all other notes given hereafter in renewal thereof, and all other notes of Borrower concurrently herewith, heretofore or hereafter delivered to or purchased or otherwise acquired by the Secured Party and all other liabilities and indebtedness of Borrower to Secured Party, due or to become due, direct or indirect, absolute or contingent, joint or several, howsoever created, arising or evidenced, now existing or hereafter at any time created, arising or incurred . . . ."

Hohenwald Bank subsequently perfected its security interest by filing a financing statement with the Tennessee Secretary of State's office. The financing statement specifically stated that the bank had a security interest in the aforementioned property "[t]o secure loan in the amount of $6,181.92."

On two subsequent occasions, the debtor incurred additional indebtedness to Hohenwald Bank. On August 1, 1980, the debtor signed a promissory note in the amount of $3,500.00 which was secured by a 1976 Chevrolet pick-up truck and on March 14, 1981, the debtor executed another note in the amount of $3,000.00 which was secured by a 1973 Chevrolet Corvette. The Corvette securing this last loan was later totaled in an accident. As a result, on July 6, 1982, the debtor signed a renewal of the note originally secured by the Corvette in the amount of $3,453.18. This note was not secured by any additional property.

Prior to any of these notes being extinguished, the debtor filed a voluntary Chapter 7 petition in this court on October 26, 1982. The debtor at this time owed $1,500.00 on the note secured by the boat, motor and trailer, $2,500.00 on the note secured by the Chevrolet truck and $3,500.00 on the renewal note. In his schedules, the debtor claimed a $4,000.00 exemption in the Checkmate boat pursuant to 11 U.S.C. § 522(d)(5).

FDIC, as receiver for Hohenwald Bank, filed a proof of claim in the debtor's bank-

---

1. This case was referred to this court pursuant to Administrative Order 28–8, which reinstated Administrative Order 28–1, the interim emergency rule, as interpreted by *White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254 (6th Cir. 1983).

ruptcy case on December 22, 1982, asserting a secured claim in the amount of $7,433.26. The debtor thereafter filed an objection to the allowance of this claim and sought to redeem the Checkmate boat pursuant to 11 U.S.C. § 722 by paying FDIC $1,500.00, the remaining indebtedness on the first note.[2] FDIC opposed the debtor's application, contending that the future advance clause in the original security agreement caused the boat to be collateral for all future advances, including the two subsequent promissory notes executed between the debtor and Hohenwald Bank. FDIC therefore asserted that it possessed a secured claim in the market value of the boat, which the parties have stipulated to be approximately °4,000.00.

Although the debtor questions the validity of FDIC's secured claim on a number of grounds, he focuses on the scope of the future advance clause contained in the original security agreement between Hohenwald Bank and the debtor. Neither party disputes that the terms of the clause are clear and unambiguous. The debtor nevertheless argues that this clause was never intended to cover the two promissory notes subsequently executed between the bank and the debtor. In support of his position, the debtor points to the facts that this clause was merely boilerplate language inserted into the security agreement by the bank, that the bank filed a financing statement which explicitly stated that the boat was security for a *loan* in the amount of $6,181.92 and that the two ensuing promissory notes failed to mention the boat as collateral securing either loan.[3]

Unfortunately for the debtor, this court cannot accept his overly restrictive characterization of the future advance clause at issue. Tennessee law, which governs the interpretation of this secured transaction, clearly sanctions the utilization of future advance clauses. Tenn.Code Ann. § 47–9–204(5) (1979).[4] Nonetheless, two distinct and diverse schools of thought have developed as to the effect of incorporating a clear and unambiguous future advance clause into a security agreement. *See Kitmitto v. First Pennsylvania Bank, N.A.,* 518 F.Supp. 297, 301 (E.D.Pa.1981). Several courts have held that, unless ambiguous, a future advance clause will encompass all future advances and parol evidence is inadmissible to contradict the clear language of the clause. *See, e.g., Kimbell Foods, Inc. v. Republic National Bank,* 557 F.2d 491, 494–496 (5th Cir.1977), *aff'd,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979); *First National Bank v. Rozelle,* 493 F.2d 1196, 1200–1201 (10th Cir.1974); *Community National Bank v. Victory (In the Matter of Public Leasing Corp.),* 488 F.2d 1369, 1377–1378 (10th Cir.1973); *State Bank v. United States (In the Matter of Riss Tanning Corp.),* 468 F.2d 1211, 1213 (2d Cir.1972); *Kenneally v. Standard Electronics Corp.,* 364 F.2d 642, 647 (8th Cir.1966); *Thorp Sales Corp. v. Dolese Brothers Co.,* 453 F.Supp. 196, 200 (W.D.Okla.1978); *Sturdevant v. First Security Bank,* 28 U.C.C.Rep. Serv. (Callaghan) 569, 572 (Mont.1980). Although not expressly articulated in any of

---

**2.** 11 U.S.C.A. § 722 (West 1979) provides:

"An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien."

**3.** The debtor also maintains that the bank's failure to disclose in these notes that the boat, motor and trailer were additional security for

these loans constituted a violation of the security disclosure requirements set forth under § 1639(a)(8) of the Truth-In-Lending Act. The debtor, however, acknowledges that this is not a defense to the enforceability of the underlying security agreement and, in light of the civil recovery provisions set forth under 15 U.S.C.S. § 1640 (Law.Co-op.1982 & Supp.1983), this court must agree with the debtor's assessment.

**4.** Tenn.Code Ann. § 47–9–204(5) (1979) provides as follows:

"(5) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment."

these decisions, an important rationale for adopting this approach is to insure certainty and consistency in commercial transactions.

Other courts have, however, taken a different view of such open ended future advance clauses. Largely concerned with the broad reach of these clauses and the distinct possibility of overreaching, these courts have, even where the clause is unambiguously drafted, looked to both the security agreement and parol evidence to insure that the parties intended the future advance clause to cover the subsequent advance in question. *See, e.g., Kitmitto v. First Pennsylvania Bank, N.A.,* 518 F.Supp. at 301–302; *Marine National Bank v. Airco, Inc.,* 389 F.Supp. 231, 234 (W.D.Pa.1975); *National Bank v. Blankenship,* 177 F.Supp. 667, 672–674 (E.D.Ark.1959), aff'd sub nom. *National Bank v. General Mills, Inc.,* 283 F.2d 574, 578–579 (8th Cir.1960); *Lansdowne v. Security Bank (In re Smith & West Construction, Inc.),* 28 B.R. 682, 683–684 (Bkrtcy.D.Or.1983); *Blurton v. Dyersburg Production Credit Association,* 26 B.R. 508, 510–511 (Bkrtcy.W.D.Tenn.1983); *In re Grizaffi,* 23 B.R. 137, 139–140 (Bkrtcy.D. Colo.1982); *In re Bason,* 20 B.R. 49, 50–51, 33 U.C.C.Rep.Serv. (Callaghan) 1121, 1123–1124 (Bankr.E.D.Tenn.1982); *Pellegrini v. National Bank,* 28 U.C.C.Rep.Serv. (Callaghan) 209, 210–211 (D.C.Super.Ct.1980); *John Miller Supply Co. v. Western State Bank,* 55 Wis.2d 385, 199 N.W.2d 161, 10 U.C.C.Rep.Serv. (Callaghan) 1329, 1333–1335 (1972); *Hancock County Bank v. American Fletcher National Bank & Trust Co.,* 150 Ind.App. 513, 276 N.E.2d 580, 10 U.C.C.Rep.Serv. (Callaghan) 490, 490–491 (1971). As Professor Grant Gilmore, one of the drafters of th Uniform Commercial Code, explained:

"Legitimate future advance arrangements are validated under the [Uniform Commercial] Code, as indeed they generally were under pre-Code law. This useful device can, however, be abused; it is abused when a lender, relying on a broadly drafted clause, seeks to bring within the shelter of his security arrangement claims against the debtor which are unrelated to the course of financing that was contemplated by the parties. In the dragnet cases, the courts have regularly curbed such abuses: no matter how the clause is drafted, the future advances, to be covered, must 'be of the same class as the primary obligation . . . and so related to it that the consent of the debtor to its inclusion may be inferred.' " (footnotes omitted).

2 G. Gilmore, Security Interests in Personal Property § 35.5, at 932 (1965).

In *Third National Bank v. Johnson,* 9 B.R. 713, 715–717 (Bkrtcy.M.D.Tenn.1981), Judge Russell H. Hippe of this district partially embraced the "same class" test described by Professor Gilmore. Specifically, Judge Hippe held that a future advance clause in a consumer loan instrument could not extend to cover subsequent indebtedness incurred by the debtor for a primarily business purpose unless there was clear evidence establishing a contrary intent. *See also Commerce Union Bank v. McAllester (In re Porter),* Bk. No. 79–30043, slip op. at 7 (Bankr.M.D.Tenn. February 5, 1980). Judge Hippe was nevertheless careful to note that the "same class" test should only be applied to "the extent necessary to distinguish between consumer and business transactions." *Third National Bank v. Johnson,* 9 B.R. at 716. Indeed, the court recognized that a future advance clause in a consumer loan instrument would cover any "future indebtedness of a personal, family, or household nature" incurred by the debtor. *Third National Bank v. Johnson,* 9 B.R. at 716.

Following the bankruptcy court's decision in *Johnson,* the Tennessee Court of Appeals for the Middle Section had occasion to address this issue and ostensibly refused to examine the parties' intentions where the security agreement contained an unambiguous future advance clause and the subsequent advance was of the same "class" as the initial obligation. *First Southern Bank v. McCullough,* 32 U.C.C.Rep.Serv. (Callaghan) 1321 (Tenn.Ct.App.1982). In *McCullough,* the defendant Clyde McCullough procured a loan evidenced by a promissory note from the plaintiff First Southern Bank

in order to purchase a 1976 Ford truck. The bank retained a security interest in the truck which was duly perfected. McCullough thereafter executed a second note with the bank in order to purchase a 1977 Toyota Corolla for his daughter. This note was secured by the Corolla and contained a clause stating that the collateral also secured all past and future liabilities of the borrower. McCullough then executed a third promissory note which in essence was a renewal of his first note.

The evidence was undisputed that McCullough purchased the Toyota for his daughter, who was a minor at the time of the transaction, and that his daughter made all of the car payments, including the down payment, out of her own personal funds. After the daughter completed these payments, First Southern refused to convey title to her because her father still owed a substantial amount on the renewal note secured by the Ford truck. This truck had previously been damaged in an accident and, since no collision insurance existed on the truck, a substantial portion of the note was left unsecured. When McCullough filed for bankruptcy, the bank asserted that it retained a security interest in the Toyota for the amount owed.

In delivering the opinion for the Court of Appeals, Judge Lewis H. Conner, Jr. discusses at great length whether the defendant McCullough or his daughter was the legal owner of the car. After concluding that the father did own the vehicle, the court has little problem finding that the future advance clause encompassed the bank's loan to the defendant for the purchase of his daughter's car. Without mentioning the possible relevance of the "class" test, the court simply gives effect to the clear and unambiguous terms of this clause. In so doing, the court adopts a solicitous view towards the utilization of such clauses by lenders, stating:

> "No doubt the terms of the security agreement are harsh to the borrower. However, so long as we recognize the sanctity of contract in this jurisdiction, agreements must be enforced, subject to public policy considerations. There are very legitimate business reasons why banks as a matter of course place 'dragnet' clauses in security agreements. One of these is to protect these lending institutions to some extent from the perils of a debtor declaring bankruptcy before repaying borrowed money. This record reveals that the defendant herein did indeed take bankruptcy, insulating him from further personal obligation to the plaintiff."

*First Southern Bank v. McCullough,* 32 U.C. C.Rep.Serv. at 1326.

Turning to the facts now before this court, it is abundantly clear that all three notes executed between the debtor and Hohenwald Bank involved consumer transactions. The original loan was given to procure a boat, motor and trailer, the second loan to purchase a Chevrolet pick-up truck and the third loan to obtain a Chevrolet Corvette. These items must have been purchased for the debtor's own personal use, since his bankruptcy schedules reflect that he is an unemployed welder who has not been engaged in any business for the six years preceding the filing of his bankruptcy petition. These circumstances are thus nearly identical to those confronting the Tennessee Court of Appeals in *McCullough* and vary greatly from the facts presented in the *Johnson* case, in which the subsequent advance was for business purposes and therefore in a different class from the original consumer loan.

Because of the identical nature of the debts incurred in this case, the clear and unambiguous language contained in the security agreement concerning future advances, the need to establish certainty in consumer transactions and the Tennessee Court of Appeals' recent decision in *First Southern Bank v. McCullough* evincing a favorable attitude towards the utilization of future advance clauses by lenders, this court is persuaded that the future advance clause in the original security agreement executed between Hohenwald Bank and the debtor covers both of the subsequent notes in question. *See also Wright v. Lincoln*

*County Bank,* 62 Tenn.App. 560, 465 S.W.2d 877, 880–881 (1971); *Murdock Acceptance Corp. v. Jones,* 50 Tenn.App. 431, 362 S.W.2d 266, 270 (1961). FDIC therefore, as receiver for Hohenwald Bank, possesses an allowed claim for $4,000.00, the stipulated fair market value of the boat.

In so holding, the court does not intend to undermine the rationale set forth by Judge Hippe in *Third National Bank v. Johnson.* This court shares Judge Hippe's concerns about the possibility of abusing the legitimate purposes of a future advance clause. Furthermore, the Tennessee Court of Appeals' decision in *First Southern Bank v. McCullough* does not necessarily conflict with Judge Hippe's interpretation of the current status of Tennessee law. The opinion does not address the specific circumstances confronted by this court in the *Johnson* case and Judge Conner, although adopting a favorable view towards the utilization of future advance clauses, does preface his remarks with the comment that future advance clauses shall be enforced "subject to public policy considerations." *First Southern Bank v. McCullough,* 32 U.C.C.Rep.Serv. at 1326.

■ As for the remaining issues, the court rejects the debtor's contention that FDIC's claim is partly unsecured because the filed financing statement does not refer to a future advance clause. As long as such a clause is included in a properly executed security agreement, the security interest created will be perfected even if the future advance clause is not mentioned in the financing statement. *See, e.g., In the Matter of Rivet,* 299 F.Supp. 374, 378–380 (E.D. Mich.1969); *In re Gilchrist Co.,* 403 F.Supp. 197, 200–203 (E.D.Pa.1975), *aff'd,* 535 F.2d 1246 (3d Cir.1976); *Citibank, N.A. v. Halpert (In re Lawrence Peska Associates, Inc.),* 27 U.C.C.Rep.Serv. (Callaghan) 272, 276–278 (Bankr.S.D.N.Y.1979). As this court recently explained in *Whirlpool Corp. v. Plad, Inc.,* 24 B.R. 676, 678 (Bkrtcy.M.D. Tenn.1982), the primary purpose of a financing statement is to provide third parties with notice that a security interest *may* exist in the collateral identified in the state-

ment. All concerned parties must make further inquiry in order to discover the complete state of affairs, including the possible existence of a future advance clause. *See also* Tenn.Code Ann. § 47–9–402 comment 2 (1979).

■ Nor can this court accept the debtor's argument that FDIC's security interest in future advances is unperfected because the privilege tax imposed by the state of Tennessee on all financing statements was unpaid. *See Jackson County Bank v. Ford Motor Credit Co.,* 488 F.Supp. 1001, 1007–1010 (M.D.Tenn.1980); *Ford Motor Credit Co. v. Ken Gardner Ford Sales, Inc.,* 10 B.R. 632, 634–640 (Bkrtcy.E.D.Tenn.1981); *In re HGS Technical Associates, Inc.,* 14 U.C.C. Rep.Serv. (Callaghan) 237, 244–246 (Bankr. E.D.Tenn.1972). Although the continuing viability of the line of cases relied on by the debtor has been called into question by the Tennessee Supreme Court in *Commerce Union Bank v. Possum Holler, Inc.,* 620 S.W.2d 487, 491–492 (Tenn.1981), the court need not address this issue since the Tennessee statute governing the payment of the privilege taxes has clearly been satisfied.

The security agreement signed by the debtor and Hohenwald Bank states that the boat, motor and trailer were collateral to secure a loan and any future advances. In perfecting this interest, Hohenwald Bank paid a tax on the principal indebtedness of $6,181.92.

Tenn.Code Ann. § 67–4102, Item S(2)(b) (1976) specifically provides that anyone seeking to record a financing statement under the Uniform Commercial Code shall pay a state tax of $.10 on each $100.00 or major fraction thereof of the indebtedness represented by the financing statement, exclusive of the first $2,000.00 of indebtedness. The statute defines the term indebtedness as "the principal debt or obligation which is, *or under any contingency may be,* secured at the date of the execution of the instrument *or at any time thereafter."* Tenn. Code Ann. § 67–4102, Items (2)(b) (1976). (emphasis added).

The broad language of the statute evinces that, once the tax is paid, the filing party

can at least assert a security interest in the collateral equal to the principal amount evidenced by the tax. This remains true whether the amount owed exists at the time of the filing or arises thereafter as future advances. Indeed, to hold otherwise would present a secured party with the impossible task of determining the exact amount of future advances which are to be made to the debtor at the time the financing statement is filed. The taxing statute was not designed to place such an insurmountable barrier on the utilization of future advance clauses by secured parties. Therefore, since the tax was paid on an indebtedness of $6,181.92 and both parties agree that FDIC is only seeking to assert an allowed secured claim of $4,000.00, the court finds that sufficient tax was paid by Hohenwald Bank to perfect a security interest in this amount.

For all these reasons, the court shall enter an order denying the debtor's application to redeem the boat by the payment of $1,500.00 to FDIC and will establish FDIC's allowed secured claim as being $4,000.00, the stipulated value of the boat which is collateral for these loans.

IT IS, THEREFORE, SO ORDERED.