**In re PREMIERE PROPERTY INVESTMENTS, LTD., Debtor,**

**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**RIVERGATE EXECUTIVE PARK, LTD., Defendant.**

**Bankruptcy No. 384–01030.
Adv. No. 384–0392.**

United States Bankruptcy Court,
M.D. Tennessee.

March 18, 1985.

John L. Schlecty, Nashville, Tenn., for plaintiff.

John H. Roe, Jr., Nashville, Tenn., for defendant.

## ORDER

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on a motion for summary judgment filed by Rivergate Executive Park, Ltd. (hereinafter referred to as "defendant"). The controversy concerns whether the defendant paid sufficient Tennessee privilege taxes to secure its $517,785 claim against property formerly owned by the debtor. Upon consideration of the stipulations, statement of counsel and the entire record, this court concludes that the defendant has a secured interest against property formerly owned by the debtor in the amount of $421,526. Due to the debtor's failure to pay privilege taxes on the accumulated interest on the second mortgage, the court holds that it did not properly perfect its security interest in $96,259 of accumulated interest.

The following shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The parties, in their pretrial statement, have stipulated to the facts in this case. On April 1, 1980, the defendant recorded a second deed of trust on property formerly owned by the debtor, paying privilege tax on indebtedness of $335,000, the principal amount of the second mortgage. On November 3, 1982, the plaintiff's predecessor in interest, United American Bank in Knoxville, recorded a third deed of trust paying a privilege or recording tax on an indebtedness of $6,900,000.

After the debtor filed its Chapter 11 petition, this court approved the sale of the real property upon which the defendant and plaintiff held second and third deeds of trust respectively. As a result of this sale, the defendant received $517,785 in full satisfaction of its claim and the plaintiff received $87,505 in partial satisfaction of its claim. The defendant's claim consisted of $335,000 of principal indebtedness, $54,026 in advancements to the holder of the first mortgage, $96,259 in accumulated interest on the second mortgage and $32,500 in

attorney's fees incurred by the defendant in pursuing its claim against the property. The plaintiff had a total indebtedness of $2,268,316.41 and has only received the above-stated amount of $87,505.

The plaintiff asserts that the defendant was only secured up to $335,000, the amount upon which it paid a recording tax. The defendant argues that it was properly secured for the full amount of its indebtedness since it complied with the Tennessee recording tax statute by paying tax on the principal amount of the indebtedness. The defendant asserts that accumulated interest, attorney's fees and payments to the first mortgage holder cannot be construed as principal under the Tennessee recording tax statute. In the alternative, the defendant claims that it acted in good faith and is entitled to a perfected security interest in the full amount of its claim under the Tennessee Supreme Court case of *Commerce Union Bank v. Possum Holler, Inc.*, 620 S.W.2d 487 (Tenn.1981).

## I.

The Tennessee recording tax statute requires, prior to the "... recordation of any instrument evidencing an indebtedness, including but not limited to mortgages, deeds of trust ...", the payment of a tax "of ten cents (10¢) on each one hundred dollars ($100) or major fraction thereof of the indebtedness so evidenced." TENN. CODE ANN. § 67–4–409(b) (1983). Indebtedness is defined as "... the principal debt or *obligation which is, or under any contingency may be,* secured at the date of the execution of the interest instrument or at

*any time thereafter....*" TENN. CODE ANN. § 67–4–409(b)(5) (1983) (emphasis added).[1]

In examining this statute, a number of courts have held that a party may only be secured up to the amount of indebtedness upon which it has paid Tennessee recording tax. In the case of *Jackson County Bank v. Ford Motor Credit Company*, 488 F.Supp. 1001 (M.D.Tenn.1980), Chief Judge Morton held that Ford Motor Credit Company's security was limited to the amount upon which it had paid recording tax. Likewise, the Tennessee Court of Appeals in the case of *American City Bank v. Western Auto Supply Company*, 631 S.W.2d 410, 423 (Tenn.Ct.App.1981) concluded that "... we believe that the effectiveness of any financing statement as an instrument of priority is limited in that respect to the amount upon which the privilege tax is paid. Beyond that it is a nullity."

The defendant argues that the Tennessee recording tax statute limits the amount of the tax to the principal amount of the indebtedness. Under this rationale, accumulated interest, attorney's fees and other amounts secured under the security agreement are not taxable. On an examination of the legislative history of the statute and Tennessee case law, this court concludes that the statute intended to tax the entire obligation upon which a party seeks secured status.

In the case of *American City Bank v. Western Auto Supply*, 631 S.W.2d 410, 426 (Tenn.Ct.App.1981), the Tennessee Court of

---

1. TENN. CODE ANN. § 67–4–409(b)(5) (1983) provides in full:

"(5) As used herein 'indebtedness' means the principal debt or obligation which is, or under any contingency may be, secured at the date of the execution of the instrument or at any time thereafter. If the principal indebtedness secured or by which any contingency may be secured is not determinable from the terms of the instrument, or if the instrument is given to secure the performance by the mortgagor, grantor, debtor or any other person of a contract obligation other than the payment of a specific sum of money, and the maximum amount secured or which by any

contingency may be secured is not expressed therein, such instrument shall be taxable upon the value of the property covered by the instrument. The value of the property shall be determined by the receiving official charged with the duty of recordation and collection of the tax, unless, at the time of presenting the instrument, the owner thereof shall file a sworn statement of the maximum amount secured by the instrument. If such maximum amount is expressed in the instrument, or the aforementioned sworn statement, such amount shall be the basis of assessing the tax imposed under this item."

Appeals examined the legislative history of the Tennessee recording tax statute. The court noted that the statute was amended in 1967 to "... include financing statements and to place the tax on the maximum indebtedness to be secured, whether the maximum existed on the filing date or arose later." *American City Bank*, at 426. In 1974, the General Assembly again amended the Tennessee recording tax statute by defining indebtedness to include future as well as presently-existing obligations. After examining the legislative history of this amendment, the court found that the reason for its enactment was crystal clear and was embodied in a speech by Senator Dunavant during floor debate:

"... [I]t has been possible to avoid the tax filing instruments which evidence only part of the intended indebtedness, or none at all, thereby paying less tax than contemplated by the law, or none at all. This permits debts incurred later or additional debt to avoid taxation.

This Section seeks to ensure taxation of the total amount of indebtedness contemplated at the time of recording.... The intent of this Section is not to create a new source of revenue, but to close the loophole which allows avoidance of the tax, and thereby thwarts the intention of the Legislature in enacting the law...."

*American City Bank*, at 426–427.

The cases examining the Tennessee recording tax statute, as amended, have consistently allowed a secured interest up to the maximum amount of tax paid. They have not distinguished between the principal amount of a debt and other secured portions such as interest or attorney's fees. *See Jackson County Bank v. Motor Credit Company*, 488 F.Supp. 1001 (M.D.Tenn. 1980); *Stewart v. Farmer's Bank (In re Johnson)*, 39 B.R. 358 (Bankr.M.D.Tenn. 1984); *In re Bates*, 35 B.R. 475 (Bankr.M.

D.Tenn.1983); *American City Bank v. Western Auto Supply Company*, 631 S.W.2d 410 (Tenn.Ct.App.1981).

■ The Tennessee case law as well as the legislative history lead this court to conclude that the broad language employed by the Tennessee legislature was intended to allow a party security up to the amount of the tax paid. To limit the tax to the principal amount of an indebtedness without requiring tax on accumulated interest payments would open a loophole to the tax statute which the legislature attempted to close.

■ In this case, the court cannot hold that the defendant was required to pay tax on only the principal amount of the indebtedness. Accordingly, the court must further analyze the facts of the case before it to determine whether the defendant may avail itself of the exception established in the Tennessee Supreme Court case of *Commerce Union Bank v. Possum Holler, Inc.*, 620 S.W.2d 487 (Tenn.1981).

## II.

In the *Possum Holler* case, the Tennessee Supreme Court established a good faith exception to the harsh rule that a party was secured up to only the amount of recording tax paid. The court held that if the facts established that a party "... made a good faith effort to comply with the indebtedness tax statute ...", then its security interest would not be limited to the amount of tax paid.[2] *Commerce Union Bank v. Possum Holler, Inc.*, 620 S.W.2d 487, 492 (Tenn.1981). In determining whether a party acted in good faith, the court examined the secured debt and the amount of tax paid to ascertain whether the party deliberately attempted to avoid tax or attempted to comply with the tax statute. In the *Possum Holler* case, the

---

**2.** The court in *Possum Holler* bolstered its decision by noting that "[i]n addition, since it is the Department of Revenue, rather than a subsequent secured creditor, who challenges the priority of the original secured party, it cannot be said that anyone detrimentally relied on the fact that between January and November of 1976

the bank had paid the tax on only $5,376.36." *Possum Holler* at 492. Based on this court's reading of the *Possum Holler* decision, the court finds that detrimental reliance is not a necessary element of the good faith exception. Accordingly, the court will not analyze this issue.

bank was found to have made a good faith effort to comply with the tax statutes and had in effect actually overpaid the tax.

 The court finds it appropriate to examine the nature of the three amounts the defendant is claiming as part of its secured debt and determine whether it acted in good faith in failing to pay a tax on these amounts. The first portion upon which the defendant seeks secured status is accumulated interest in the amount of $96,259. The promissory note given by the debtor to the defendant evidences a loan of $335,000 at 12% interest per annum for a term of three years. Under the terms of the note, the principal balance with accumulated interest became due on the third annual anniversary of the execution of the note. Since the note contemplated a one-time payment of principal and interest, it is a simple matter to determine the total amount of indebtedness which will be secured immediately prior to the time when the note becomes due. The court holds that the defendant did not act in good faith by failing to pay a recording tax for the amount of accumulated interest.

 The defendant has also sought secured status with respect to payments it made to the first mortgage holder to protect its second mortgage and payment of attorney's fees in seeking to foreclose on its security. While the deed of trust contemplated that such payments would under certain eventualities become part of the secured indebtedness, it would be an impossible task to determine the exact amount such payments might be under any contingency. Accordingly, the court holds that the defendant acted in good faith when it paid tax on $335,000 of the indebtedness, but failed to include any amount for attorney's fees or payments to the first mortgagee.

 Accordingly, the court holds that the defendant is not properly secured for $96,259 in accumulated interest but is properly secured for $54,026 in advancements to the first mortgage holder and for $32,500 in attorney's fees. The court hereby ORDERS, ADJUDGES and DECREES that the defendant's motion for summary judgment is GRANTED in part and DENIED in part.[3]

IT IS, THEREFORE, SO ORDERED.

---

3. The defendant has also argued that the FDIC should be estopped from bringing this claim since it failed to raise the privilege tax issue at a previous hearing in which the defendant was granted relief from the stay to foreclose against the subject property. The court finds that the FDIC's right to challenge the defendant's security interest was properly reserved within this court's order allowing the sale of the subject property pursuant to 11 U.S.C. § 363 (West 1979).

The court finds no justification for the defendant's position on this issue. The FDIC was not a party to the relief stay litigation. Furthermore, the relief stay litigation determined the issues of whether the debtor had equity in the property and whether said property was necessary for a reorganization. Such determinations do not preclude the FDIC from bringing their present claim. Accordingly, the court finds that the FDIC has standing to attack the defendant's security interest in this proceeding. The fact that the defendant chose not to appear at the 11 U.S.C. § 363 (West 1979) hearing is of no relevance.