In re COMPREHENSIVE REVIEW TECHNOLOGY, INC., Debtor.

COMPREHENSIVE REVIEW TECHNOLOGY, INC., Plaintiff,

v.

STAR BANK, CENTRAL OHIO, Defendant.

Bankruptcy No. 2–91–02813. Adv. No. 2–91–0250.

United States Bankruptcy Court, S.D. Ohio, E.D.

Feb. 27, 1992.

A.C. Strip, Columbus, Ohio, for plaintiff.

James R. Moats, Columbus, Ohio, for defendant.

## ORDER

DONALD E. CALHOUN, Jr.,
Bankruptcy Judge.

This matter is before the Court upon the Complaint to Determine Validity, Extent and Priority of Alleged Liens filed by Comprehensive Review Technology, Inc. ("Debtor"). The Debtor's Complaint seeks determination of the validity, extent, and priority of certain liens against its assets asserted by Star Bank, Central Ohio (the "Creditor"). The liens are alleged to exist in connection with three loans made by the Creditor to the Debtor. It is undisputed that the Debtor defaulted on all three loans.

A trial was held October 4, 1990 to consider this matter at which time the parties were afforded an opportunity to present evidence in support of their respective positions. This Court is vested with jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

## I. *Findings of Fact*

### A. First Note

On November 1, 1989, the Creditor extended the Debtor a loan in return for a Promissory Note (the "First Note") for $160,000.00. The parties contemporaneously entered into a Security Agreement (the "First Security Agreement"), whereby the Creditor was given a security interest in the Debtor's then existing and after—acquired inventory, accounts receivable, equipment, fixtures and furniture. The First Security Agreement also contains a future advance clause which grants the Creditor a security interest to secure the payment of any loans "existing or hereafter arising, including any extensions, or renewals thereof...." The Creditor perfected its security interest by filing financing statements with the Recorder's Office of Franklin County, Ohio and the Ohio Secretary of State's Office on November 9, 1989. As of February 20, 1991, the Debtor owed a balance of $150,221.80 on the First Note.

### B. Second Note

On April 17, 1990, the parties entered into a Promissory Note (the "Second Note") for $75,000.00. A Security Agreement (the "Second Security Agreement"), agreed to on the same day, grants the Creditor a security interest in "[a]ll accounts, accounts receivable, or rights to payment of any kind, now existing or hereafter arising, [and] all proceeds thereof in any form." The Creditor did not file a Financing Statement in conjunction with the Second Security Agreement. As of February 20, 1991, the Debtor owed a balance of $66,732.85 plus accrued interest on the Second Note.

## C. Third Note

On September 19, 1990, another Promissory Note (the "Third Note") was entered into between the parties for $120,000.00. A Security Agreement (the "Third Security Agreement") grants the Creditor a security interest in "[t]hose receivables arising from a certain contact between the Indiana Department of Employment and Training Services and Comprehensive Review Technology, Inc. (the Debtor) dated April 1, 1990." The Creditor filed financing statements in conjunction with the Third Security Agreement with the Recorder's Office of Franklin County, Ohio and the Ohio Secretary of State's Office on November 16, 1990. As of February 20, 1991, the Debtor owed a balance of $125,186.00 plus accrued interest on the Third Note.

## II. *Conclusions of Law*

The parties concede that this matter must be resolved under the Uniform Commercial Code as adopted in Ohio.

Paragraph 12 of the First Security Agreement provides as follows:

> The term of this Agreement shall commence with the date hereof and end of the termination date which is the date when the Borrower has paid in full all the obligations secured hereby *and* the Bank gives notice to the Borrower that no further loans are to be made hereunder. Until such termination, this Agreement shall be a continuing one. (emphasis added).

The Debtor argues that the First Security Agreement terminated, because the Creditor gave notice that no further loans were to be made under the First Security Agreement when the parties entered into the Second Note on April 17, 1990.

The above quoted paragraph provides that the First Security Agreement is to terminate when the Creditor gives the appropriate notice *and* when the Debtor repays in full the obligations secured by the First Security Agreement. The Debtor does not dispute that it has not repaid in full the obligations secured by the First Security Agreement and that $151,661.80 was owed as of February 20, 1991. Therefore, the Court finds that the First Security Agreement has not terminated under the terms of paragraph 12.

The Debtor also argues that the specific facts surrounding the three loans require a finding that the three loans constituted three separate transactions. In support of this contention, the Debtor cites the following: 1) financing statements were only filed with regard to the First and Third Security Agreements; 2) three separate security agreements were entered into regarding the three Notes; 3) neither the Second nor Third Security Agreement state that they were undertaken in contemplation of a former security agreement; 4) each security agreement listed a separate category of collateral; and 5) the Second Note failed to reference the First Security Agreement, despite the opportunity to do so by virtue of a provision in the Second Note indicating that "this Note is not issued under the provisions under a loan agreement dated _____." This space was left blank by the parties.

The Debtor contends that the separate character of the loans required the Creditor to file a separate financing statement for each Security Agreement in order for the Creditor to have a perfected security interest in the collateral referenced in the Security Agreements. Instead, the Creditor filed one set of financing statements in conjunction with the First Note and Security Agreement, describing numerous and various items of collateral, and another set of financing statements in conjunction with the Third Note and Security Agreement, describing the receivables to be paid to the Debtor by the Indiana Department of Employment and Training. The Debtor argues that the Creditor's failure to file separate financing statements for each loan resulted in the security interests not becoming perfected.

These factors produce two issues for purposes of this decision. First, whether the future advance clause contained in the First Security Agreement is sufficient to grant the Creditor a security interest in all of the collateral listed therein to secure all three notes. Second, whether one fi-

nancing statement may support several subsequent security agreements covering the same collateral.

The First Security Agreement provides: In consideration of loans or other financial accommodations heretofore or at anytime hereafter made or granted by ... [the Bank], [the Borrower] hereby grants, transfers, pledges and assigns to the Bank a security interest in all of Borrower's assets or rights ... to secure the payment of all such loans and all other indebtedness and liabilities of Borrower to the Bank, due or to become due, *now existing or hereafter arising, including any extensions or renewals thereof....* (emphasis added).

Thus, the First Security Agreement evinces an intent to include a future advance clause. Section 1309.15(C) O.R.C. states that "[o]bligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment...."

Official Comment 5 provides that the section's reference to future advance clauses is limited to security agreements and is not required to be included in a financing statement. The comment also states that the purpose of § 1309.15 O.R.C. "is to make clear that confirmatory agreements are not necessary where the basic agreement has the clauses mentioned." Thus, the First Security Agreement contains a *valid future advance clause.* These parties intended that future loans were to be secured by the collateral listed in the First Security Agreement.

Having determined that the First Security Agreement contains a valid future advance clause, it remains to be determined whether the Notes secured by the Second and Third Security Agreements were contemplated under the future advance clause in the First Security Agreement. A similar inquiry was undertaken in *In re Bates,* 35 B.R. 475 (Bankr.M.D. Tenn.1983).

In *Bates,* the debtor received a loan from a bank to purchase a boat. The Bank obtained a security interest in the debtor's boat by virtue of a security agreement. The security agreement contained a future advance clause. The bank filed a financing statement and subsequently extended two additional loans to the debtor. These loans were secured by a truck and a car. Upon default and bankruptcy, the debtor sought to reclaim the boat and argued that it only had to pay off the first note to do so. The debtor argued that the future advance clause was not intended to cover the two promissory notes subsequently entered into between the bank and the debtor, because 1) the clause was merely boilerplate language inserted by the bank; 2) the financing statement only stated that the boat was security for "a loan"; and 3) the subsequent promissory notes did not mention the boat as collateral security on either loan.

Seeking to insure certainty and consistency in commercial transactions, numerous courts have held that "unless ambiguous, a future advance clause will encompass all future advances and parol evidence is inadmissible to contradict the clear language of the clause." *Bates,* 35 B.R. 475, 477. (citations omitted). "Other courts, concerned with the possibility of overreaching have, even where the clause is unambiguously drafted, looked to both the security agreement and parol evidence to insure that the parties intended the future advance clause to cover the subsequent advance in question." (citations omitted). According to these courts, future advances, to be given effect, "must be of the *same class* as the primary obligation ... and so related to it that the consent of the debtor to its inclusion may be inferred." (emphasis added) *Bates,* 35 B.R. 475, 478 (citing 2 G. Gilmore, *Security Interests in Personal Property* § 35.5, at 932 (1965)). Applying both views, the *Bates* court held that the future advance clause in the original security agreement covered the subsequent notes, because 1) the language concerning the future advance clause was clear and unambiguous; 2) there exists a need to establish certainty in consumer transactions; and 3) all three notes were of the same class since they were all consumer loans and not a mixture of consumer loans

and business loans. *Bates,* 35 B.R. 475, 479–80.

Application of the analysis employed in *Bates* would result in the same outcome in the case presently before this Court. The language of the future advance clause at issue in this case is clear and unambiguous insofar as it grants the Creditor a security interest "to secure the payment of all such loans and all other indebtedness and liabilities of Borrower to the Bank, due or to become due, now existing or hereafter arising, including any extensions or renewals thereof...." Further, giving effect to such unambiguous terms, to which the parties contracted, helps to insure certainty and consistency in commercial transactions. Lastly, all three Notes were of the same class. The Notes all involved business loans. Therefore, the repayment of the Second and Third Notes is secured by the collateral listed in the First Security Agreement which includes the after-acquired property mentioned.

■ In considering the second issue, the Creditor cites §§ 1309.22(A) and 1309.39(A) and the Official Comments of the Ohio Revised Code as support for the proposition that a financing statement may be pre-filed. Section 1309.30(A), for example, states that "[a] financing statement may be filed before a security agreement is made or a security interest otherwise attaches." The Creditor argues that it was therefore entitled to rely on the financing statements filed on November 7, 1989 to perfect its security interests with regard to the Second and Third Security Agreements.

This argument misses the mark. As a general proposition it does not necessarily follow that because a financing statement may be pre-filed that a pre-filed financing statement will support security agreements subsequent to the original security agreement without more. Thus, the sections of the Ohio Revised Code relied upon by the Creditor do not address the issue of whether a financing statement may support subsequent security agreements.

Both parties indicated to the Court, at hearing, that they were unable to discover any statutory or case law concerning this question. It was the parties' belief that the practice of filing or not filing (depending upon which party was addressing the Court at the time) a financing statement was such a generally accepted legal practice that the issue was seldom litigated. The parties therefore urged the Court to issue an opinion of first impression to resolve the matter. The Court, after performing its own research, has concluded that there is no need to issue an opinion of the magnitude suggested by the parties, as the Court, through its own efforts, was able to locate statutory authority and a substantial body of case law addressing the question presented by this case. The Court has no explanation for the difficulties the parties apparently encountered in briefing this issue.

Although not cited by either party, § 1309.31 O.R.C. and the accompanying Official Comments do address the requirement of Section 1309.31(G) provides as follows:

> If future advances are made while a security interest is perfected by filing, ... the security interest has the same priority for the purposes of division (E) of this section with respect to the future advances as it does with respect to the first advance. If a commitment is made before or while the security interest is so perfected, the security interest has the same priority with respect to advances made pursuant thereto. In other cases a perfected security interest has priority from the date the advance is made.

Official Comment 7 and the accompanying Example provide as follows:

> 7. The application of the priority rules to future advances is complicated. In general, since *any secured party must operate in reference to the UCC's system of notice, he takes subject to future advances under a prior security interest while it is perfected through filing or possession, whether the advances are committed or noncommitted,* and to any advances subsequently made "pursuant to commitment" (R.C. § 1309.01(11) [UCC 9–105]0 during that period....

Example 5. On February 1 A makes an advance against machinery in the debtor's possession and files his financing statement. On March 1 B makes an advance against the same machinery and files his financing statement. On April 1 A makes a further advance, under the original security agreement, against the same machinery (which is covered by the original financing statement and thus perfected when made). A has priority over B both as to the February 1 and as to the April 1 advance and it makes no difference whether or not A knows of B's intervening advance when he makes his second advance.

A wins, as to the April 1 advance, because he first filed even though B's interest attached, and indeed was perfected, before the April 1 advance. The same rule would apply if either A or B had perfected through possession. R.c. 1309.15(c) [UCC 9–204(e)] and the Comment thereto should be consulted for the validation of future advances.

*The same result would be reached even though A's April 1 advance was not under the original security agreement, but was under a new security agreement under A's same financing statement or during the continuation of A's possession.*

Thus, the Ohio Revised Code supports the proposition that a financing statement may perfect several security agreements subsequent to the original security agreement, so long as the original security agreement contains a valid future advance clause.

■ Cases decided under the same or similar language as found in U.C.C. Section 9–312(7) have so held for years. It is axiomatic that one financing statement may be filed to support many subsequent security agreements covering the same collateral. *In re Rivet*, 299 F.Supp. 374 (E.D.Mich. 1969) (One financing statement was sufficient to secure a loan which was subsequently refinanced four times where no new collateral was used to secure the new notes); *In re Simpson*, 4 UCC Rep. Serv. 250 (D.C. W.D. Mich. Ref.1966) ("One financing statement may support many security agreements and may be filed before

an agreement is executed"); *In re Richards*, 1 UCC Rep. Serv. 620 (Bankr.Conn. 1963) (The purpose of filing of a financing statement is to put interested parties on notice that further inquiry should be made of the secured party with regard to the collateral listed. "A filed financing statement will apply to and cover all inventory security agreements made by the parties during a five-year period without the necessity of refiling a financing statement each time a security agreement is made."); *In re Bloomingdale Milling Co., Inc.*, 4 UCC Rep. Serv. 256 (Bankr. W.D. Mich. Ref. 1966) ("The concept of the financing statement under UCC is similar to the policy with respect to trust receipt transactions under the former Uniform Trust Receipts Acts. Thus, one financing statement may serve to perfect security interest attaching by reason of any number of subsequently executed security agreements."); *Household Finance Corp. v. Bank Comr. of Md.*, 248 Md. 233, 235 A.2d 732 (1967) (A financing statement is not a lien, but is only a "method of giving notice of the probability that the secured party has a security interest in the stated collateral. The creditor was not required to terminate the financing statement on record and simultaneously file a new one upon refinancing of security transaction."); *In re Davis*, 43 B.R. 629 (Bankr. M.D. Tenn.1984) (financing statement covering original promissory note and security agreement was sufficient to support subsequent promissory notes and security agreements covering the same collateral as the original security agreement where it contained a future advance clause. "A financing statement is designed to give notice that the secured party identified in the statement may have a security interest in the collateral described.") The primary purpose of a financing statement is merely to put the public on notice that a secured party may have a security interest in the collateral described. It then falls upon the interested party or parties to make further inquiry to determine the extent of that security interest. *In re Rivet*, 299 F.Supp. 374; *Household Finance*, 248 Md. 233,

234–35, 235 A.2d 732, 733–34; *In re Bates,* 35 B.R. 475, 480 (Bankr.M.D.Tenn.1983).

Based upon all of the foregoing, the Court finds that the financing statements filed on November 9, 1989 perfected the Creditor's security interest in the collateral identified in the First Security Agreement and financing statement as to the Notes dated November 1, 1989, April 17, 1990, and September 19, 1990.

IT IS SO ORDERED.