**In re Kenneth J. CONTE, Debtor.**

**Kenneth J. CONTE, Plaintiff,**

v.

**COMMUNITY CREDIT UNION, Defendant.**

**Bankruptcy No. 95–42406.
Adversary No. 96–4022.**

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Jan. 26, 1998.

Richard A. Pelley, Sherman, TX, for Plaintiff.

Sharon H. Sjostrom, Blalock & Williams, P.C., Dallas, TX, for Defendant.

### OPINION

DONALD R. SHARP, Chief Judge.

NOW before the Court for consideration is Debtor's Complaint to Determine Extent and Validity of Lien ("Complaint"). This opinion constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rules of Bankruptcy Procedure 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 1992, Debtor purchased a 1989 Cadillac Sedan DeVille automobile (the "vehicle"). Debtor financed the vehicle with Community Credit Union ("CCU"). The Debtor signed a document entitled "Loanliner Note and Disclosure Statement" which is a preprinted form purporting to include the promissory note, the federally required truth in lending disclosure statement and the security agreement.

On July 14, 1992, pursuant to a solicitation from the Credit Union, Debtor accepted a MasterCard from CCU.

Debtor has paid the original loan on the vehicle in full and owes the sum of $7,158.64 on the MasterCard which was the debt on the date of the filing of this Chapter 7 bankruptcy proceeding.

This case arose because Debtor asked the Credit Union to deliver title to the vehicle after full payment of the debt and CCU refused to deliver the title, asserting that the cross-collateralization clause in the automobile loan gave them a valid lien on the vehicle to secure the payment of the MasterCard debt.

### DISCUSSION OF LAW

Debtors' Complaint challenges the validity of CCU's lien on the vehicle under the theory

that the cross-collateralization clause is invalid. Consequently, Debtors argue that the lien should have been released upon payment of the original loan.

Numerous courts have upheld the validity of cross-collateralization clauses. See *In re Felker*, 181 B.R. 1017 (Bankr.M.D.Ga.1995); *In re Comprehensive Review Technology*, 138 B.R. 195 (Bankr.S.D.Ohio 1992); *In re Wetzel*, 134 B.R. 718 (Bankr.W.D.N.Y.1992); *In re Bates*, 35 B.R. 475 (Bankr.N.D.Tenn. 1983); *In re Phillips*, 161 B.R. 824 (Bankr. W.D.Mo.1993); and *Rocket City Federal Credit Union v. Kennemer*, 143 B.R. 275 (Bankr.N.D.Ala.1992). While courts have approved such clauses, courts have been cautious in enforcing them. *In re Phillips*, 161 B.R. 824 (Bankr.W.D.Mo.1993).

Likewise, Texas law has recognized the validity of cross-collateralization clauses; relevant Texas statutes provide:

(c) Obligations covered by a security agreement may include future advances or other value....

Tex.Bus. & Com.Code Ann. § 9.204 (Tex. UCC) (Vernon 1991)

Under subsection (c) collateral may secure future as well as present advances when the security agreement so provides. Tex.Bus. & Com.Code Ann. § 9.204 comment 5 (Tex. UCC) (Vernon 1991).

■ Under Texas law, cross-collateralization provisions apply only to indebtedness which was reasonably within the contemplation of the parties to the security instrument at the time it was made. *Moss v. Hipp*, 387 S.W.2d 656, 658 (Tex.1965); *Republic Nat. Bank of Dallas v. Zesmer*, 187 S.W.2d 227, 229 (Tex.App.–Dallas 1945). Debtors argue that they did not intend for the MasterCard debt to be secured by the vehicle, therefore, the cross-collateralization clause is invalid as to the MasterCard debt.

The documentary evidence in this case consisted of two exhibits, one of which is a copy of the contract concerning the vehicle and the second of which is the first page of the Community Credit Union solicitation to the Debtor with the Debtor's signature evidencing acceptance of the credit card. Debtor testified without objection that it was never his intent to secure the credit card debt with the pledge of the automobile. The Credit Union takes the position that the plain language of the contract cannot be interpreted in any way except that any future debt of any kind is secured by the security interest in the vehicle.

This issue was discussed by the Fifth Circuit at length in the case of *Kimbell Foods, Inc. v. Republic Nat. Bank*, 557 F.2d 491 (1977), and in that case, the Court reviewed the law of Texas and articulated several general concepts by which the validity of these clauses would be determined in Texas. Of particular import to the case at bar, the Fifth Circuit stated at page 495 "Texas Courts do not recognize the application of a future advance clause unless the future advance to be secured was 'reasonably within the contemplation of the parties to the mortgage at the time it was made.' *Wood v. Parker Square State Bank*, 400 S.W.2d 898, 901 (Tex.1966). See also *Moss v. Hipp*, 387 S.W.2d 656 (Tex. 1965); *Walenstein and St. Clair*, annual survey of Texas Law—Property, 30 S.W.L.J. 28, 53 N. 214 (1976)." The Court then recognized the principle of law established in the *Moss v. Hipp* case that a future advance clause in a mortgage does not secure a subsequent debt from the debtor to a third party acquired from the third party by the mortgagee. The Court then stated at that same page "in light of this evidence, we conclude that in Texas a further extension of credit to the debtor by the lender is deemed future indebtedness reasonably contemplated by the parties when they execute a future advance clause." The Court then concluded that it was error for the district court to have considered parol evidence as to the subjective intent of the parties in making the determination of whether the future advance to be secured was reasonably within the contemplation of the parties. The Court analyzed the documentary evidence before it and concluded that the documentary evidence showed that the security interest was established to allow the maker of the instrument to buy inventory on credit and that none of the circumstances surrounding the execution of the documents negated the intent that the

security agreements cover future inventory purchases on account.

■ Although the *Kimbell* opinion does not indicate whether the parol evidence was admitted over the objection of the opposing party or whether the evidence was elicited without objection, this Court concludes that the testimony of the Debtor should not be considered in determining the intent of the parties but reliance should be had on the documentary evidence alone.

The document introduced into evidence as Plaintiff's Exhibit 1 is the note and disclosure statement. Plaintiff singles out one paragraph appearing on the reverse of the instrument as the controlling paragraph in this case. That paragraph reads as follows:

The security interest secures the loan described in the Truth in Lending Disclosure and any extensions, renewals or refinancings of that loan. It also secures any other loans you have with the credit union now or in the future and any other amounts you owe the credit union for any reason now or in the future. If the property description is marked with one star (*), or the property is household goods as defined by the Credit Practice Rule, the property will secure only this loan and not other amounts you owe.

If one looks at the front page of the document, there is no indication that it is a loan or security interest to secure future advances. The truth in lending disclosure required by federal law clearly describes a $15,000. loan with interest at nine and one-half (9 1/2%) percent per annum which totals $3,138.80. The disclosure further discloses that the total of all payments will be $18,-138.80 to be repaid in 47 installments of $378.00 plus one installment of $372.80. There is no disclosure that this is an open end credit transaction as that term is defined in Federal Truth in Lending Transactions [1], but it is simply the garden variety closed end automobile purchase transaction.

On the reverse of the document there are two paragraphs dealing with security interests. The section quoted above and in addition, there is a section at the top of the page titled "Note (Continued)" which contains the following paragraph:

Any property shown in the "Security Offered" section on the reverse side will be security for this loan. In addition, you agree this loan is also secured by all the shares and deposits in all your individual and joint accounts with the credit union now and in the future. Shares and deposits in an Individual Retirement Account and any other account that would lose special tax treatment under state or federal law if given as security are not subject to the security interest you give in your shares and deposits. Property you have given to secure other loans will also secure this loan.

This provision is a cross-collateralization clause to pledge other collateral to this debt. The front of the document discloses that this additional collateral secures the described loan. This is important in determining the intent of the parties since the instrument, as to this issue, is internally consistent in that the granting of the collateral as security for the loan is disclosed on the face of the document and further described on the reverse of the instrument. There is no explanation as to why that cross-collateralization clause should be disclosed on the front of the document as well as the reverse and the cross-collateralization clause at issue in this proceeding should not appear on the front of the document where the important elements of the transaction are disclosed. It is easy for the Court to conclude that the cross-collateralization clause dealing with the grant of Credit Union accounts as additional security for the loan was within the intent of the parties. The instrument makes it clear that this clause was a part of the deal between the parties. If the parties had agreed on the other cross-collateralization clause (the one at issue in this proceeding) then it is entirely

---

**1.** This Court does not consider whether or mean to imply that the Creditor has not complied with Truth in Lending regulations. This discussion is only to recognize the credit union's failure to indicate that this transaction was what they now claim that it was. Whether or not the Truth in Lending regulations were complied with is not at issue. The description of the transaction contained in the document is important as objective evidence of the parties' true intent at the time.

inconsistent for them not to disclose that on the face of the instrument where the important aspects of the transaction are disclosed. Considering all of these aspects of instrument together, it certainly does not appear that the parties intended to create an instrument pledging security for future advances.

The other document placed into evidence is the solicitation mailed out from the Credit Union to Debtor informing him in bold type that "a Community Credit Union Master-Card has been specially reserved for: Kenneth J. Conte." That document also shows that Mr. Conte signed the request form accepting the credit card on July 9, 1992, but the terms of the cardholder agreement are not contained on that document and were not placed into evidence. This Court has no evidence as to whether or not the cardholder agreement contained any provision evidencing an intent of the parties that the Master-Card debt would be secured by the automobile. Also mitigating against the finding that it was the intent of the parties to secure the credit card debt with the automobile is the language of the credit card solicitation itself. This was a typical credit card solicitation seeking a new credit card customer and requesting his acceptance of the card. If the parties had entered into an agreement a mere two months earlier to issue a credit card and secure it with the automobile, then the solicitation and sales pitch contained in the mail-out would have been unnecessary.

While it is clear that Texas law provides for mortgages to secure future advances and there is no question but that parties can enter into such contracts, this Court does not believe that the Creditor has clearly shown that this was a transaction designed for the purpose of granting security to secure future advances. If one looks at the Texas cases considered by the Fifth Circuit in *Kimbell*, it is clear that the mere inclusion of a reference to securing future advances somewhere in the contract is not dispositive of the issue. If that were the case, then the principle of Texas law recognized by the Fifth Circuit, that only those advances contemplated by the parties would be approved would have no meaning. This Court believes that the teaching of the Fifth

Circuit in the *Kimbell* case is that one must look at the entire transaction and be convinced from that transaction that it was the intent of the parties to establish a credit line so that the borrower could pledge security on one occasion which would then secure an ongoing line of borrowing from that same institution.

The Court also took pains to explain the general concepts that (1) such a clause would only be valid if the subsequent indebtedness arose directly out of transactions between the two parties, (2) that the language of the contract must clearly and unambiguously reflect the intention of the parties to cover subsequent advances and (3) that the subsequent indebtedness must be of the same class or character as the first indebtedness. There is no question that the Credit Union and Mr. Conte could have entered into an agreement by which he pledged his vehicle as security for any indebtedness incurred by use of the credit card or in any other manner. This Court simply does not believe that the documents placed into evidence at this hearing demonstrate that intention.

There was no disclosure in the Truth in Lending Disclosure section on the face of the document that indicated any type of open ended credit transaction was being entered into. That section clearly and unambiguously shows that it is a one time credit transaction with specific payments at a specific rate of interest which would be completely paid in 48 months. Nowhere on the face of the document is there any hint that it is other than a purchase money security interest in the vehicle which will be completely paid at the end of that 48 month period. This Court can only assume that the cardholder agreement would not shed anymore light on the situation since the creditor failed to place it into evidence. Looking at all of the documentary evidence, this Court cannot conclude that it clearly and unambiguously evidences an intention to create a security interest for an ongoing line of credit. Only one sentence in the entire document tends to support that position and the entire face of the document tends to negate that position. This Court can only conclude that the inclusion of that sentence in the preprinted document was a

unilateral act by the Credit Union which was totally at odds with the remainder of the document. Such evidence does not signify the clear intent of the parties.

This Court finds that upon the payment of the original debt the security interest was extinguished and accordingly, CCU holds no valid lien on Debtor's vehicle.