**UNITED STATES of America,**
**Plaintiff,**

v.

**AUTOMATIC HEATING & EQUIPMENT**
**COMPANY, Inc. and Park National**
**Bank, Defendants.**

**Civ. A. No. 3944.**

United States District Court
E. D. Tennessee, N. D.

March 3, 1960.

The escrow fund represents the balance of the proceeds arising from the foreclosure sale of real estate in Knox County under a trust deed given by the taxpayer to the bank on January 3, 1956 to secure a loan in the amount of $24,-939.60. The amount realized for the property under the foreclosure was $30,-000, out of which the bank was paid $22,-314.22, which represented the unpaid balance of the original loan, including interest, taxes and expenses of sale.

Subsequent to the original loan the bank made three additional loans aggregating $145,000 which were secured by assigned accounts. There is an unpaid balance due on these loans of $69,083.08. The bank claims that the original trust deed also secured the subsequent loans to the extent of $24,939.60 and that it is entitled to the escrow fund, while the Government claims that the aforementioned trust deed was not security for the subsequent loans because such loans were separate and distinct transactions which had no relationship to the prior mortgage or trust deed.

The parties stipulated to numerous facts, including those which have been stated.

The pertinent provision of the trust deed and the one relied upon by the bank to support its claim to the disputed fund reads as follows:

"In addition to the above described indebtedness this deed of trust shall also secure any and all other indebtedness *due* from first party, or either of them, whether directly or indirectly to the beneficiary herein, its successors or assigns, up to an amount not exceeding $24,939.60, whether evidenced by note or notes, draft, check, or otherwise, and any and all renewals thereof, in whole or in part which may be now or hereafter held by or become due to the beneficiary herein, its successors and assigns within a period of ten years from the date of this instrument." (Italics supplied.)

John C. Crawford, Jr., U. S. Atty., John F. Dugger, Asst. U. S. Atty., Knoxville Tenn., for plaintiff.

W. W. Davis, H. A. Tapp, Knoxville, Tenn., for defendants.

TAYLOR, District Judge.

This suit involves a contest between the Government and the Park National Bank of Knoxville, Tennessee over a fund in the amount of $7,685.78 now held by the Park National Bank under an escrow agreement between the parties.

For convenience the Park National Bank will be referred to as the bank and Automatic Heating & Equipment Company, Inc. as the taxpayer.

The Government also seeks a judgment against the defendant, Automatic Heating & Equipment Company, Inc., for unpaid withholding and unemployment taxes for the years 1956 and 1957 in the amount of $28,788.07. This amount is not in dispute. If the Government is successful in its claim to the escrow fund the amount thereof will be applied as a credit on the judgment.

This is the so-called "open-end" provision of the trust deed which was referred to by the parties so many times in oral argument and in their briefs.

The question for decision in the case is not one of priority of liens. It is whether or not the foregoing provision of the mortgage secured the loans that were made subsequent to the loan of January 3, 1956 which was secured by the trust deed.

■ Mortgages given to secure future advances are valid in Tennessee. McGavock v. Deery, 1860, 41 Tenn. 265. This is in accord with the majority rule. 36 Am.Jur.—Mortgages—Sec. 64, pp. 720, 721. The rule was reaffirmed in the case of Kingsport Brick Corp. v. Bostwick, 1921, 145 Tenn. 19, 235 S.W. 70. In that case the mortgagee's lien was held superior to the liens of materialmen because the mortgage was registered prior to the date the materials were furnished. Although some of the money had not been advanced prior to the date some of the materials had been furnished, the Court stated that this made no difference because the mortgagee was obligated to advance the money.

■ A distinction is made in some cases in which the mortgagee is bound to advance a given sum and those in which he is not bound. Again the general rule is that an obligation of the mortgagee to make future advances is not necessary to the validity of the mortgage to secure the advances. 36 Am.Jur. —Mortgages—Sec. 65, p. 721.

■ The bank, in the instant case, was not obligated to make the advances but this is not material to the issue as it is stipulated that the bank made all of the loans that are involved prior to the date the Government registered its tax liens. The question between the bank and the Government is not the usual one of priority, but whether the bank, under the provisions of the trust deed, had a lien at all for the subsequent advances.

The case of Theilen v. Chandler, 1928, 9 Tenn.App. 345, involved a contest over the priority of a deed of trust and a mechanic's lien and is not applicable here.

An appraisal was made by the bank of taxpayer's real estate covered by the mortgage on December 22, 1955. The total value was fixed at $43,500. The bank was permitted to loan as much as 60% of the value under banking rules. Taxpayer's Board of Directors held a special meeting on January 3, 1956 and authorized its President and Secretary to borrow $21,500 from the bank to be paid in 60 equal installments of $415.66 each and to secure said loan by a first mortgage on the real estate which is described in the resolution. The President and Secretary were authorized to sign the trust deed and note "and to do any and all things pertinent thereto that may be required by the lender". The resolution does not refer to an open-end mortgage.

The loan was secured to improve the building that was on the real estate and to construct additional buildings. Taxpayer spent about $32,000 for the real estate and the improvements thereon.

Ben Burnette, President of the taxpayer, thought the trust deed secured only the loan of $24,939.60 described therein. He may have read the trust deed but does not recall reading the open-end mortgage clause. He never heard of it until about seven or eight months prior to the time he testified.

Mr. Dovat, Vice President and Cashier of the bank, testified that the open-end provision was drawn at his request.

The bank, by resolution of its Executive Committee dated March 22, 1955, had approved a line of credit to the taxpayer limited to $100,000. On January 3, 1956, taxpayer owed the bank $82,526.08 that was secured by assigned accounts with a continuing guaranty of Mrs. John F. Humphrey of $30,000. Mr. Dovat assigned as reason for his desire for the open-end provision that he did not consider it good business for the taxpayer to mortgage its real estate and that assigned open accounts are not considered as adequate security. He did not

recall whether he mentioned the open-end provision to Mr. Burnette.

On August 6, 1956 the bank loaned to the taxpayer an additional sum of $50,-000 as evidence of which taxpayer executed its note of the same date due and payable 60 days from date and secured by assigned accounts totaling $64,146.11. There is an unpaid balance due on this loan of $15,000.

On October 1, 1956 the bank again loaned the taxpayer $50,000 which was evidenced by a note of the taxpayer of the same date and due October 31, 1956 which was also secured by assigned accounts totaling $58,563.74. There is a balance due on this loan of $18,488.12.

On November 28, 1956 the bank made an additional loan to the taxpayer of $45,000 which was evidenced by a note of the same date payable 60 days from date and also secured by assigned accounts totaling $48,303.78. The outstanding balance on this loan is $35,634.-96.

The bank ledger sheet and the notes themselves show that all of these loans were secured by assigned accounts. No mention was made either in the notes or on any bank record that any of these loans were secured under the open-end mortgage provision contained in the January 3, 1956 trust deed. Each of these loans was secured to pay operational expenses of taxpayer so as to enable it to complete contracting work which it had obligated itself to do. These loans were not related to the loan secured by the trust deed.

The Government contends that the foregoing circumstances surrounding the three subsequent loans show that the bank did not rely upon the open-end provision of the trust deed as additional security for the loans; and, that the loan secured by the trust deed was for $24,939.60 whereas the three subsequent loans aggregated $145,000 or almost six times the amount of the original loan. It is said that reliance upon the real estate as security for the subsequent loans offended banking rules since the real estate was already mortgaged to an amount around 60% of its appraised value. This argument overlooks the fact that the taxpayer made payments from time to time on the loans and that the bank believed that under ordinary circumstances they were adequately secured by the assigned accounts, but as a matter of added protection or in the nature of secondary security it relied upon the open-end provision for protection. The argument also overlooks the positive testimony of Mr. Dovat who stated that the bank did rely on the trust deed as security in making all of the subsequent loans.

■ In view of the positive testimony of Mr. Dovat the Court must find that the bank, in making these subsequent loans, relied upon its lien contained in the trust deed on the real estate of the taxpayer as additional security for such loans.

It is further contended by the Government that the open-end provision is too indefinite and uncertain to meet the requirements of law governing mortgages to secure future advances. It is said that the language in the mortgage is so indefinite that a creditor could not find out anything from an examination of the record and would be forced to secure his information from the debtor, a most unsatisfactory source from which to seek such information.

The Government's attorneys state that they have not been able to find any Tennessee cases to support their position on this point. They do cite the case of Pettibone v. Griswold, 4 Conn. 158, in which a provision contained in a mortgage to secure "all other notes the said grantee might indorse for or give for said Griswold, at the bank or elsewhere, and all receipts said Pettibone, deceased, might hold against said Griswold", was condemned as "dangerously indefinite".

■ The language in the present trust deed is more definite than was the language in the mortgage in the Connecticut case and the Connecticut decision is not considered as decisive of the present case. The trust deed under consideration identifies the lienor, the property to

which the lien allegedly attached, and the amount secured by the open-end provision, namely, $24,939.60. It is the opinion of the Court that the wording in the mortgage is sufficient to show with reasonable certainty the amount of indebtedness purportedly secured by the trust deed, the holder of the indebtedness and the property to which the security attached. See United States v. Ringler, U.S.D.C.N.D.Ohio E.D.1958, 166 F.Supp. 544.

We have held that the bank made the three subsequent loans aggregating $145,000 believing that such loans were secured by the trust deed on the taxpayer's real estate to the extent of $24,939.-60, in addition to the assigned accounts; or, as Mr. Dovat put it, the Bank would not have made these loans "without a cushion in the real estate". We have also held that the wording of the trust deed is of sufficient definiteness to make it valid under the Tennessee law.

But these findings do not solve our problem. In order to find an answer to the problem, the meaning of the open-end provision must be determined. If the trust deed secured only the $24,939.60 and all other indebtedness in existence at the time the trust deed was executed, to wit, January 3, 1956, up to an amount not exceeding $24,939.60, the bank is not entitled to the escrow fund because the indebtedness that was in existence at the time the trust deed was executed was paid in full on March 1, 1956. On the other hand, if the trust deed secured all indebtedness that was incurred by the taxpayer after January 3, 1956, up to $24,939.60, then the bank is entitled to the escrow fund.

We must look to the so-called open-end provision of the trust deed and the circumstances surrounding its execution in order to determine its meaning. The taxpayer had done considerable business with the bank before the loan secured by the trust deed was made, including the making of a number of loans secured by assigned accounts. The bank ledger shows that these loans began as early as August 8, 1955. Only one ledger sheet

was filed but it may be reasonably inferred from it that loans were made many months prior to that date.

An indebtedness of $82,526.08 was outstanding on the date the trust deed was executed. The so-called open-end provision of the trust deed states that the trust deed secures the $24,939.60 note of the same date and in addition to that indebtedness the trust deed "shall also secure any and all other indebtedness *due* from first party". (Emphasis by the Court). The first party referred to is the taxpayer.

The word "due" means "owed or owing" as distinguished from payable. A debt is often said to be due from a person where he is the party owing it, or primarily bound to pay, whether the time for payment has or has not arrived. The same thing is true of the phrase "due and owing". Black's Law Dictionary, Fourth Edition.

Another definition of the word "due" is "that which is due or owed; debt." Webster's New International Dictionary, Second Edition.

"The word 'due' is defined as owed, owing, owing and unpaid, remaining unpaid, an indebtedness * * * In re Gillingham's Estate, 220 Pa. 353, 69 A. 809, 810, citing Fulweiler v. Hughes, 17 Pa. 440; 14 Cyc. p. 1107." 13 Words and Phrases, containing definitions of word "Due" p. 442.

Following the provision to the effect that the trust deed shall secure in addition to the amount of $24,939.60 due from the taxpayer to the beneficiary, or its successors, all other indebtedness up to an amount not exceeding $24,939.60 is the language "whether evidenced by note or notes, draft, check, or otherwise, and any and all renewals thereof, in whole or in part, which may be now or hereafter held by or become due to the beneficiary herein, its successors and assigns within a period of ten years from the date of this instrument". It is clear to the Court that the language "may be now or hereafter held by or become due" refers only to note or notes or any other evidence of an *existing* indebtedness that

may be renewed or held by the beneficiary and become due within a period of ten years. The above quoted language shows that the trust deed secured (a) the $24,939.60 note dated January 3, 1956; (b) all other indebtedness that was due from the taxpayer to the bank on January 3, 1956 up to $24,939.60 (the $82,526.08 was secured under this provision of the trust deed); and, (c) any and all renewals of evidences of indebtedness that existed on January 3, 1956, "which may be now or hereafter held by or become due" to the bank, its successors and assigns, "within a period of ten years" from the date of the trust deed.

The conclusion is inescapable that the foregoing quoted language of the trust deed does not relate to future transactions but is confined to obligations in existence at the time the trust deed was drawn. There is no language in the trust deed that states or implies that it secures any indebtedness other than that which was in existence at the time the trust deed was executed. There is no language which states that the trust deed shall cover other indebtedness which may *become due*. It seems impossible to read into the language of this paragraph any other interpretation. The fact that the subsequent loans, which are the basis of the claim of the bank for the balance of the proceeds from the sale of the land, were made before the Government's liens were filed is beside the point.

It results that since all of the taxpayer's indebtedness to the bank that was in existence on January 3, 1960 has been paid, the Government is entitled to the escrow fund instead of the bank, as the trust deed did not relate to future transactions.

The Court, in reaching this conclusion, realizes that it has placed an interpretation on the open-end provision of the trust deed different from that of the Government attorneys and the attorneys for the bank. For this reason alone, the Court has reached its conclusion with more than ordinary difficulty. If the trust deed applies to future transactions as stated by counsel for the Government and by counsel for the bank, then the Court has reached an erroneous conclusion. The interpretation of the mortgage clause involves a question of law and this is the reason that the Court did not feel duty bound to follow the interpretation placed on the mortgage by the Government and the bank.

The Government is also entitled to a judgment for the withholding and unemployment taxes stipulated. The judgment will be credited with the amount received by the Government from the escrow account.

Let an order be presented.