In re William A. JOHNSON, Debtor.

**THIRD NATIONAL BANK IN NASHVILLE, Plaintiff,**

v.

**William A. JOHNSON, Defendant.**

Bankruptcy No. 380–00665.
Adv. No. 380–0528.

United States Bankruptcy Court,
M. D. Tennessee.

Feb. 26, 1981.

James William Hofstetter, Jr., Nashville, Tenn., for plaintiff.

Henry A. Seligmann, Nashville, Tenn., for defendant.

## MEMORANDUM

RUSSELL H. HIPPE, Jr., Bankruptcy Judge.

This matter is before the court upon a complaint filed by Third National Bank [hereinafter cited as Bank] seeking relief from the automatic stay imposed by 11 U.S.C. § 362(a) relative to a motor vehicle that it contends secures repayment of a loan in excess of $14,400.

On May 27, 1977, the debtor executed a security agreement wherein the Bank was granted a security interest in a 1974 Ford Pinto automobile to secure the repayment of a loan, the proceeds of which were used to purchase the vehicle. The total amount of the indebtedness thus secured was $2,849.76. Paragraph 5 of the security agreement provided:

> This security interest is given to secure the performance of the covenants and agreements herein set forth ... and all money heretofore and hereafter advanced by Secured Party to or for the account of Debtor at the option of the Secured Party, and all other present or future, direct or contingent liabilities of Debtor to Secured Party, of any nature whatsoever
> . . . .

On December 1, 1978, the debtor obtained another loan from the Bank in the principal amount of $14,400. The parties have not introduced any evidence relating to the purpose for the second loan. The debtor executed a note evidencing this indebtedness. The space provided therein for the designation and description of collateral was left blank. No security agreement was executed.

The debtor repaid the initial loan with the exception of certain minor late-payment penalties and additional interest charges claimed by the Bank. The debtor defaulted upon the repayment of the second loan. The Bank obtained a judgment against the debtor in a state court upon that note.

A preliminary hearing was held within thirty days after the filing of the Bank's complaint, at which time the court enjoined the Bank from obtaining possession of the automobile pending a determination of whether the vehicle secures repayment of the second loan by virtue of the future advance clause contained in the May 1977 security agreement.

■ Future advance clauses are valid under Tennessee law. Tenn.Code Ann. § 47–9–204(5) (1979); *United States v. Automatic Heating & Equipment Co.*, 181 F.Supp. 924 (E.D.Tenn.1960), *aff'd*, 287 F.2d 885 (6th Cir. 1961); *In re White Plumbing & Heating Co.*, 6 U.C.C.Rep.Serv. 467 (E.D.Tenn. 1969) (B.J.); *McGavock v. Deery*, 41 Tenn. (1 Cold.) 265 (1860); *Wright v. Lincoln County Bank*, 62 Tenn.App. 560, 465 S.W.2d 877 (1970); *see Cabbage v. Citizens Bank & Trust Co.*, 31 Tenn.App. 283, 214 S.W.2d 572 (1948). In most jurisdictions, including Tennessee, future advance clauses historically have been strictly construed against the creditor. *See, e. g., United States v. American Nat'l Bank*, 255 F.2d 504 (5th Cir. 1958); *United States v. Automatic Heating & Equipment Co., supra*; Walker, *The Elusive Security Interest: Tennessee Variations on a Theme*, 41 Tenn.L.Rev. 831, 839 (1974). In order for future indebtedness to be secured by reason of a future advance clause in the initial credit instrument, some courts require that the subsequent debt "be of the same class as the primary obligation secured by the instrument and so related to it that the consent of the debtor to its inclusion may be inferred." *Marine Nat'l Bank v. Airco, Inc.*, 389 F.Supp. 231 (W.D. Pa.1975); *National Bank v. Blankenship*, 177 F.Supp. 667 (E.D.Ark.1959), *aff'd sub nom. National Bank v. General Mills, Inc.*, 283 F.2d 574 (8th Cir. 1960); *Pellegrini v. National Bank*, 28 U.C.C.Rep.Serv. 209 (D.C.Super.Ct.1980); *Security Bank v. First Nat'l Bank*, 263 Ark. 526, 565 S.W.2d 623 (1978); *Community Bank v. Jones*, 278 Or. 647, 566 P.2d 470 (1977); 2 G. Gilmore, Security Interests in Personal Property § 35.5 (1965). The application of the "same class" test to future advance clauses that specifically provide that additional indebtedness of whatever nature is to be secured by the collateral securing the initial indebtedness has been criticized and explicitly or implicitly has been rejected by some courts. *First Nat'l Bank v. Rozelle*, 493 F.2d 1196 (10th Cir. 1974); *Thorp Sales Corp. v. Dolese Bros. Co.*, 453 F.Supp. 196 (W.D.Okl. 1978); *In re Dorsey Electric Supply Co.*, 344 F.Supp. 1171 (E.D.Ark.1972); Note, *Future*

*Advances Financing under the Uniform Commercial Code: Curbing the Abuses of the Dragnet Clause*, 34 U.Pitt.L.Rev. 691, 697 (1973). Still other courts have upheld future advance clauses without any discussion of the "same class" test. *State Bank v. United States (In re Riss Tanning Corp.)*, 468 F.2d 1211 (2d Cir. 1972); *Kenneally v. Standard Electronics Corp.*, 364 F.2d 642 (8th Cir. 1966); *Maloy v. Citizens & Southern Nat'l Bank*, 139 Ga.App. 798, 229 S.E.2d 678 (1976).

Tennessee courts both before and after the adoption of the Uniform Commercial Code generally have upheld future advance clauses without any discussion of the "same class" test. In *Murdock Acceptance Corp. v. Jones*, 50 Tenn.App. 431, 362 S.W.2d 266 (1961), the debtor, a used car dealer, executed a deed of trust to secure a loan from the creditor for the purchase of inventory. The deed of trust contained a future advance clause providing that the deed secured the inventory loan "together with any and all other indebtedness now or at any time due" by the debtor. Under the terms of a repurchase agreement with the same creditor, the debtor assigned conditional sales contracts with his customers to the creditor. Upon default in payment under such contracts, the debtor was obligated either to repurchase the contracts or to repurchase the automobiles from the creditor. Subsequent to the initial loan, the debtor executed several notes payable to the creditor for the repurchase of automobiles pursuant to the repurchase agreement. Finding that the language used in the deed of trust was plain and unambiguous and was such that the average layman would understand it to mean that all indebtedness owed to the creditor would be secured by the deed, the Tennessee Court of Appeals upheld the future advance clause and held that the deed of trust secured not only the initial loan, but also the subsequent indebtedness. In *Wright v. Lincoln County Bank*, 62 Tenn.App. 560, 465 S.W.2d 877 (1970), the Tennessee Court of Appeals held that a deed of trust that had been executed to secure a loan to an insurance agency and

that contained a future advance clause also secured a subsequent loan to the agency. The court in *Wright* discussed *Murdock* only to the extent necessary to determine whether the language that was used in the future advance clause was sufficiently clear and unambiguous. *See* 465 S.W.2d at 880.

It has been suggested that *Murdock* represents an inclination on the part of Tennessee courts to reject the "same class" rule. Note, *Future Advance Clauses in Tennessee—Construction and Effect*, 5 Mem.St.U.L.Rev. 586, 589–97 (1973). Neither *Murdock* nor *Wright*, however, discusses the "same class" rule. Moreover, both of the debts in *Murdock* and both of those in *Wright* were of a business nature.

Two federal bankruptcy decisions rendered subsequent to *Murdock* suggest that the Tennessee courts would apply some form of the "same class" test to the validity of future advance clauses. In *In re White Plumbing & Heating Co., supra*, the bankrupt business had executed a security agreement contemporaneously with the obtaining of a loan for the purchase of a truck. The security agreement provided that the truck was to secure repayment of the purchase loan and "any other indebtedness or liabilities ... hereafter arising, due or to become due, absolute or contingent, and whether several, joint, or joint and several, of the debtor to the bank." The bank subsequently made a second loan to the bankrupt and a third loan for the purchase of a backhoe and trailer. The bankrupt did not execute any security agreement in connection with the second loan but did grant the bank a security interest in the backhoe and trailer. The bank failed to perfect its security interest before the bankrupt filed its petition in bankruptcy and thereafter sought to recover from the trustee the proceeds from the sale of the truck, although the initial loan had been subsequently repaid. Concluding that the transactions between the bank and the bankrupt were related and of the same class, the bankruptcy judge held that, by virtue of the future advance clause in the first security agreement, the truck secured all three of the loans. 6 U.C.C.Rep.Serv. at 470. In *Commerce Union Bank v. McAllester (In re Porter)*, BK No. 79–30043 (Bankr. Ct.M.D.Tenn., Feb. 5, 1980), this court declined to enforce a future advance clause in part because the subsequent indebtedness consisted of business loans whereas the initial indebtedness had been in the nature of personal loans.

 It appears to the court that the Tennessee courts would apply the "same class" rule to the extent necessary to distinguish between consumer and business transactions. Absent a clearly expressed intent to the contrary, consumer goods secure only future indebtedness of a personal, family, or household nature and not future indebtedness of a business or commercial nature. Such a distinction is consistent with the holdings in *Murdock, Wright,* and *White Plumbing*, in each of which both the primary indebtedness and the subsequent indebtedness were of a business or commercial nature. Such a distinction likewise is consistent generally with those decisions from other jurisdictions that have enforced future advance clauses by rejecting or without discussing the "same class" rule. *See State Bank v. United States (In re Riss Tanning Corp.), supra* (business indebtedness); *Kenneally v. Standard Electronics Corp., supra* (business indebtedness); *Thorp Sales Corp. v. Dolese Bros. Co., supra* (business indebtedness); *In re Dorsey Electric Supply Co., supra* (business indebtedness); *Maloy v. Citizens & Southern Nat'l Bank, supra* (consumer indebtedness). *Contra, First Nat'l Bank v. Rozelle, supra* (business and personal indebtedness). Such a distinction also appears appropriate in the light of the unique nature of consumer goods recognized by the Uniform Commercial Code and in the light of the special treatment accorded consumer credit transactions by the federal Truth-in-Lending Act.[1]

---

**1.** Regulation Z under the Truth-in-Lending Act requires

[a] description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with

■ A secured creditor who seeks to enforce a future advance clause with respect to consumer goods has the burden of showing that the subsequent indebtedness is a consumer debt. The Bank failed to produce any evidence indicating that the debtor's $14,400 loan was in the nature of a consumer debt. The amount of that loan suggests that it was not. The court thus concludes that the 1974 Ford Pinto does not secure repayment of that latter loan.

the extension of credit, and a clear identification of the property to which the security interest relates .... [I]f other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.

12 C.F.R. § 226.8(b)(5) (1979). The existence of a future advance clause must be disclosed not at the time of the future advances that are to be secured by the same security given for the original loan, but at the time of the initial loan. *General Finance Corp. v. Garner*, 556 F.2d 772, 778–79 (5th Cir. 1977).