In re Kelly PHILLIPS, Debtor.

No. 93–20153–C–13.

United States Bankruptcy Court,
W.D. Missouri, C.D.

Dec. 13, 1993.

Rick Fink, Chapter 13 Trustee.

Janice E. Harder, Hindman, Scott, Goldstein & Harder, Columbia, MO, for Mizzou Credit Union.

Noel T. Magee, Columbia, MO, for debtor.

### MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

### FACTS

Debtor filed a petition for rehabilitation under Chapter 13 on March 4, 1993. Debtor listed a 1985 Bonneville Belaire Mobile Home with a value of $7,000.00 and an undersecured debt against said mobile home due to Mizzou Credit Union for $9,764.19. However, Mizzou's several claims and attachments showed a 1983 Chief Mobile Home, Bonavilla Series 1 with a value of $11,570.00, as security for a Purchase Money Security Agreement with an unpaid balance of $9,823.77 and a Visa account with a balance of $1,142.83. Since Mizzou claimed the value of the mobile home was $11,570.00, it also claimed that it was fully secured on both loans by virtue of a "dragnet" clause in the Purchase Money Security Agreement.

Debtor filed two objections to Mizzou's claims. First, debtor claimed that the value of the mobile home was now $8,663.00 and thus Mizzou's PMSI claim should be only $8,663.00 secured and $1,160.77 unsecured. Second, debtor objected to the inclusion of the Visa account in Mizzou's secured claim, asserting it was unsecured because of the terms of the Visa loan agreement.

Mizzou furnished the Visa agreement which was executed October 3, 1989. As to security interests it provided as follows:

"Security Interest. To secure your account you grant to us a purchase money security interest under the Uniform Commercial Code in any goods you purchase through the account. If you default, we will have the right to recover any of these goods which have not been paid for through our application of your payments in the manner described in paragraph 6. With respect to the account only, we will not assert any statutory rights we may have if you are in default to prevent withdrawal of your unpledged Credit Union shares (deposits) below the unpaid balance of your account. You hereby pledge to us and grant us a security interest in all shares on deposit (except in Individual Retirement Accounts and KEOGH Plan Accounts) with us now and in the future, to secure your accounts. If you default, you authorize us to apply these shares in payment of any amount due on your account or under this Agreement."

Mizzou also furnished a copy of the PMSI agreement and Truth–In–Lending Disclosure which was executed September 27, 1990. The security agreement provided:

"What The Security Interest Covers—The security interest secured the loan described in the Truth–In–Lending Disclosure and any extensions, renewals or refinancing of that loan. It also secured any other loans you have with the credit union now or in the future and any other amounts you owe the credit union for any reason now or in the future. If the property description is marked with a star (*), the property will secure only the loan described in the Truth–In–Lending Disclosure."

Needless to say, the mobile home was not marked with a star (*) thereby limiting the extent of the pledge.

### DISCUSSION

The first issue then for the Court to consider is the value to be placed on the mobile home. If the value is (1) $7,000.00; or (2) $8,663.00; or (3) $8,766.00; (the three figures advanced by the debtor at (1) time of filing; (2) time of objecting; (3) time of trial) then the question as to whether the Visa account is also secured by the mobile home is moot because the PMSI balance is greater than any of the three figures.

Both parties presented appraisals. Debtor's appraiser valued the mobile home at $8,766.00. Mizzou's appraiser valued the mobile home at $14,500.00. The mobile home dealers equivalent of the NADA book for automobiles showed the subject vehicle to have an average value of $11,570.00. The Court finds the value of the vehicle to be $11,500.00. This requires the Court to resolve the second issue as to whether the Visa

balance is secured by Mizzou's security interest in the mobile home.

■ Several courts have pondered this question. However, this Court has found only Bankruptcy Court—not Circuit or District—decisions on the point. Even on the question of "drag-net" clauses in general, there is a dearth of appellate decisions construing their effect. Only an unpublished Colorado bankruptcy court opinion deals with a PMSI motor vehicle loan containing a "dragnet clause" allegedly securing a credit card account. See *In re White*, No. 81 Mc 1653; 81 B 02408 Mc, slip op. (Bankr.D.Colo. Sept. 23, 1981). While the facts in *White* presented a similar issue, the court dodged the bullet by finding that the dragnet clause of the PMSI was not properly perfected under the Colorado motor vehicle title statute.

Reviewing the law in this area is an interesting study in how loath courts have been to enforce "drag-net" clauses. For example, the Supreme Court of Kansas in 1974 said:

"Despite recognition by both judicial and legislative bodies that the dragnet mortgage fills a contemporary need in the complex world of business, it is not a favorite of the law ..." *Emporia State Bank and Trust Company v. Mounkes*, 214 Kan. 178, 519 P.2d 618 (1974).

With such faint praise for "dragnet" clauses it will come as no surprise that the court disallowed the second note as a secured claim.

With comparable contempt spoke the Iowa Supreme Court in *First v. Byrne*, 238 Iowa 712, 28 N.W.2d 509 (1947):

"Dragnet" clauses are not highly regarded in equity. They should be carefully scrutinized and strictly construed l.c. 512, 513.

That court likewise failed to hold for the payee of the debts. Or see *Berger v. Fuller*, 180 Ark. 372, 21 S.W.2d 419, where the Arkansas Supreme Court observed:

"... mortgages of this character have been denominated 'anaconda mortgages', and are well named thus, as by their broad and general terms they enwrap the unsuspecting debtor in the folds of indebtedness embraced and secured in the mortgage which he did not contemplate, and to extend them further than has already been done would, in our opinion, be dangerous and unwise ..." l.c. 421.

Needless to say, the 'snake' did not fare well in that court.

Missouri, perhaps because of its more commercial orientation and less debtor orientated background, has not engaged in such anti dragnet comments. As early as 1933, the Missouri Supreme Court stated that the words: "any other obligation of the undersigned to the payee herein, now existing or that may hereafter arise" created a valid provision which made the collateral pledged on one loan, collateral for other loans between the parties. See *Russell et al. v. Empire Storage & Ice Co.*, 332 Mo. 707, 59 S.W.2d 1061 (1933), l.c. 1070. Moreover, the Eighth Circuit Court of Appeals in *Zuke v. St. Johns Community Bank*, 387 F.2d 118 (8th Cir.1968) affirmed the Eastern District of Missouri in holding that numismatic coins pledged for a loan were also collateral for a checking account overdraft when the security agreement provided that said collateral secured the payment of all other liabilities owing by the bankrupt to the bank. See *In re Midas Coin Co.*, 264 F.Supp. 193 (E.D.Mo. 1967) for the district court opinion.[1] Thus, the Missouri courts have been more hospita-

---

1. More recently, the Eighth Circuit has affirmed the use of a "dragnet clause" in a home mortgage under North Dakota law. *Ulmer v. First Nat'l Bank and Trust Co.*, 12 F.3d 1103 (8th Cir.1993). In *Ulmer*, the debtors executed a promissory note secured by a mortgage containing a future advance clause. Subsequently, the debtors executed two additional promissory notes and an additional mortgage. The bank properly perfected the original mortgage but not the second one. The debtors sought to avoid the second mortgage in bankruptcy. The bankruptcy court granted summary judgment for the bank finding that the future advance clause validly secured the latter two promissory notes. In affirming the bankruptcy court, the Eighth Circuit noted that North Dakota law favors the use of future advance clauses. While the future advance clause in *Ulmer* was not as broad as the "dragnet" in the present case, *Ulmer* demonstrates that the Eighth Circuit is not innately hostile to "dragnets" and will enforce them when it comports with state law. This is consistent

ble to "dragnet clauses" than neighboring states and are more likely to enforce them.

A number of courts in seeking a palatable means of avoiding the effects of "dragnet clauses" have adopted an intent requirement to the "dragnet" contract and approve same only where the payor "intended" to pledge the collateral for other obligations. Such courts use the so called classification test to provide the measuring stick whereby intent is determined. In other words, if a debtor agreed to a "dragnet clause" in a business loan, only other business loans would be secured by virtue of the "dragnet" because both loans would be of the "same class". *E.G. Sowers v. Federal Deposit Insurance Corporation,* 96 B.R. 897 (S.D.Iowa 1989); *Third Nat'l Bank v. Johnson,* 9 B.R. 713 (Bkrtcy.M.D.Tenn.1981).[2] While that latter holding has been repudiated by the Tennessee legislature, it has had considerable citation by other bankruptcy courts. See *In re Willie,* 157 B.R. 623 (Bkrtcy.M.D.Tenn.1993). The Court has found no case in Missouri adopting or rejecting this approach.

This Court need not consider whether Missouri would apply the classification test because both the mobile home loan and the Visa account are consumer debts, secured by consumer goods, and can be classified as the "same class" under the *Johnson* standard. Other courts have held that the "dragnet" clause can never secure more money than the original balance of the original security agreement. See *In re Bass,* 44 B.R. 113 (Bkrtcy.N.M.1984). Once again this court need not consider that issue. The original mobile home loan secured a $12,000.00 balance. This is more than the balance that Mizzou now claims to be secured which is only $10,966.60. Therefore, the balance claimed to be secured is not more than the original security, obviating the need to consider whether the "dragnet" may pull in more than the original balance.

■ Based on the foregoing, Missouri will enforce a well drafted, properly perfected "dragnet" clause with, perhaps, some limited exceptions. Missouri has not addressed the

applicability of those exceptions, and they are not presently before the Court. This Court obviously does not make any conclusion on the "same classification" issue nor on the "original balance" issue.

The Court now turns to the case at hand. Debtor argues that the Visa account, by the terms of the Visa loan agreement, is not a secured debt. This argument is not borne out by examination of the document. In fact, the bank took what steps it could at the time of its execution to secure the Visa account. Nor does the Visa loan agreement contradict the Purchase Money Security Agreement which secured any other loans with the bank "now or in the future." Had the documents been at odds, the later in time, the "dragnet", would control. The plain reading of the loan documents indicate the Visa account is secured by the PMSI. Missouri is hospitable to dragnet clauses. Therefore, the Court finds Mizzou's claims to be fully secured.

### CONCLUSION

Mizzou had a "dragnet clause" which in Missouri is a valid provision. The value of the collateral exceeds the balances on the two obligations. Both obligations are secured claims and must be treated as such. The debtor's objections to Mizzou's claims are OVERRULED. Confirmation is DENIED at this time.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.

---

with the result in *Zuke v. St. Johns Community Bank.*

**2.** The *White* decision, also a 1981 opinion, speculated that Colorado would apply the classifica-

tion test; however, the court's holding was based on state motor vehicle title law. *In re White,* No. 81 Mc 1653; 81 B 02408 Mc, slip op.