In re Douglas A. HILL, Ramona L. Hill, Debtors.

Paul G. SWANSON, Trustee, Plaintiff,

v.

MONTELLO STATE BANK, Defendant.

Bankruptcy No. 96–22423–MDM.
Adversary No. 96–2615.

United States Bankruptcy Court,
E.D. Wisconsin.

July 1, 1997.

Colleen Bissett, for plaintiff.

Valerie L. Bailey–Rihn, Madison, WI, for defendant.

### MEMORANDUM DECISION

M. DEE McGARITY, Bankruptcy Judge.

#### INTRODUCTION

This adversary for avoidance of a preferential transfer was brought by the Chapter 7 Trustee against Montello State Bank. The Bank subsequently moved for summary judgment and argued that it is entitled to judgment as a matter of law. The Trustee disputes the Bank's assertions and claims that he is entitled to judgment. A statement of stipulated facts, briefs, affidavits, and exhibits have been filed and the parties have agreed that there are no genuine issues of material fact to be resolved. The court has jurisdiction based upon 28 U.S.C. §§ 1334(a), (b) and 157(a). A proceeding to determine, avoid, or recover preferences is a core proceeding. 28 U.S.C. § 157(b)(2)(F).

#### STIPULATED FACTS

The significant events that transpired between the parties are not in dispute. On October 2, 1993, the debtors executed a real estate mortgage in favor of the Bank. The real property subject to the mortgage was comprised of the debtor's homestead and a vacant lot. The mortgage secured the following:

> This Mortgage secures prompt payment to Lender of (a) the sum stated in the first paragraph of this Mortgage, plus interest and charges according to the terms of the promissory notes or agreement of Borrower to Lender identified on the reverse side, and any extensions, renewals or modifications of such promissory notes or agreement, (b) to the extent not prohibited by the Wisconsin Consumer Act (i) any additional sums which are in the future loaned by Lender to any Mortgagor, to any Mortgagor and another or to another guaranteed or endorsed by any Mortgagor primarily for personal, family, or household purpose and agreed in documents evidencing the transaction to be secured by this Mortgage, and (ii) all other additional sums which are in the future loaned by Lender to any Mortgagor, to any Mortgagor and another or to another guaranteed or endorsed by any Mortgagor, (c) all interest and charges, and (d) to the extent not prohibited by law costs and expenses of collection or enforcement (all called the "Obligations"). This Mortgage also secures the performance of all covenants, conditions and agreements contained in this Mortgage.

(Real Estate Mortgage ¶ 5, Exhibit 1). The mortgage also provided that the mortgagor was to pay all taxes and assessments levied against the property. (Real Estate Mortgage ¶ 6, Exhibit 1). On January 2, 1994, the debtors executed a renewal of the original mortgage note in the amount of $66,650.89. (Variable Rate Mortgage Note, Exhibit 2).

At the time their bankruptcy was filed, the debtors had several other outstanding loans with the Bank. The debtors had a Master-Card Gold credit card through the Bank with a credit limit of $5,000, which was applied for on October 2, 1992. On December 23, 1993, the debtors opened two Ready Reserve Account Agreements with the Bank, which functioned as overdraft protection for the

debtors' checking accounts. Both reserve accounts provided the following:

> The Loan Balance and Finance Charges are or may be secured by a lien upon any credit balance or other money now or hereafter owed to Borrower by Bank, and by all security agreements of Borrower now or hereafter held or acquired by Bank.

(Ready Reserve Account Agreement, Exhibits 4 & 5).

In April 1994, the debtors executed a Consumer Simple Interest Note and Chattel Security Agreement in connection with the purchase of a 1990 vehicle. The vehicle note contained the following statements:

> Lender may, at any time after the occurrence of an event of default and notice and opportunity to cure, if required by § 425.105, Wis. Stats., set-off any amount unpaid on the Obligations against any deposit balances I may at any time have with Lender, or other money now or hereafter owed me by Lender. This Agreement is also secured (to the extent not prohibited by the Wisconsin Consumer Act) by all existing and future security agreements between Lender and any of us, between Lender and any guarantor or indorser of this Agreement, and between Lender and any other person providing collateral security for my Obligations. However, this Agreement is not secured by any principal dwelling unless described in this Agreement.

(Consumer Simple Interest Note and Chattel Security Agreement § 8(a), Exhibit 7).

On January 27, 1996, the debtors sold the vacant lot which was subject to a mortgage held by the Bank for $19,000. The Bank received $17,253.61 from the sale of the lot in return for providing the debtors with a Partial Release of Mortgage. According to a Bank officer, Mr. Hill told the Bank that it could apply the proceeds at its discretion.[1] (Wayne Pivotto Affidavit ¶ 5). Instead of applying the entire proceeds to the real estate mortgage note, the Bank applied the proceeds from the sale of the lot as follows: (1) $9,182.22 was applied to the debtors' MasterCard credit card debt; (2) $4,935.62 was applied to the debtors' two Ready Reserve Accounts; (3) $1,260.67 was applied to the debtors' delinquent real estate taxes on their homestead; (4) $612.74 was applied to the debtors' vehicle loan with the Bank; and (5) $1,262.36 was applied to the debtors' Mortgage Note.

On March 28, 1996, the debtors, Douglas and Ramona Hill, filed a voluntary petition for Chapter 7 relief and were granted a discharge on July 17, 1996. The Chapter 7 Trustee filed an adversary proceeding against the Bank, alleging the Bank received a preference by applying the sale proceeds to the MasterCard, Ready Reserve Accounts and Vehicle Note. The Trustee does not contest the Bank's application of the funds toward the debtors' delinquent real estate taxes and Mortgage Note.

### ARGUMENTS

The Bank contends that, because it was fully secured at the time it executed the partial mortgage satisfaction in return for a $17,253.61 payment, it did not receive more than it would have received in a Chapter 7 proceeding had the transfer not occurred. 11 U.S.C. § 547(b)(5). The Bank also claims that the debtor had no interest in the funds transferred. Finally, if the payment is determined to be a preferential transfer, the payment constituted a contemporaneous exchange for new value. 11 U.S.C. § 547(a)(2).

The Trustee argues that the dragnet clause contained in the Mortgage Note is invalid under Wisconsin law because the debts are not identified in clear terms, *John Miller Supply Co. v. Western State Bank*, 55 Wis.2d 385, 394, 199 N.W.2d 161, 165 (1972). Consequently, the Bank's applications of the proceeds toward the debtors' MasterCard debt, Ready Reserve Accounts and Vehicle Note are preferences. Additionally, the Trustee contends that the Wisconsin Consumer Act prohibits the Bank from taking a security interest in the debtors' real property if the obligation is less than $1,000, and all charges or draws on the MasterCard and

---

1. However, according to the debtors' schedules, the proceeds were used to pay the credit card and reserve loan without the debtors' permission. (Schedule B ¶ 20; Schedule C).

reserve accounts were probably under $1,000. Wis. Stat. § 422.417(3).

## DISCUSSION

### 1. *Preferential Transfer*

The elements of a preference under 11 U.S.C. § 547(b) are: (1) a transfer of property of the debtor; (2) to or for the benefit of a creditor; (3) on account of an antecedent debt; (4) made within 90 days of bankruptcy; (5) while the debtor is insolvent; and (6) with the effect of giving the creditor a greater return on his/her debt than would have been the case had the transfer not taken place and had there been a distribution under the liquidation provisions of the Code. *See In re Rude,* 122 B.R. 533, 535 (Bankr. E.D.Wis.1990). The plaintiff has the burden of proving the avoidability of a transfer under § 547(b).

A transfer is defined in the Bankruptcy Code:

> "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption

11 U.S.C. § 101(54). In this proceeding, the trustee has established through stipulated facts and exhibits that a transfer occurred. Whether or not the transfers were interests of the debtors' property depends on whether the " 'transfer will deprive the bankruptcy estate of something which could otherwise be used to satisfy the claims of creditors.' " *Matter of Merchants Grain, Inc.,* 93 F.3d 1347, 1352 (7th Cir.1996) (quoting *In re Bullion Reserve of North America,* 836 F.2d 1214, 1217 (9th Cir.1988)). The debtors had an interest in the lot, so they had an interest in the proceeds of the sale of the lot. The Bank's interest was for security, but that did not negate the debtors' interest. Whether or not the transfers deprived the bankruptcy estate turns on whether or not the obligations satisfied by the proceeds of the sale were, in fact, included in the Real Estate Mortgage's dragnet clause.

It is undisputed that the sale proceeds were provided to or for the benefit of the Bank, a creditor, on account of an antecedent debt. Additionally, the Bank received the proceeds from the sale of the lot on January 29, 1996, within 90 days of the debtors' bankruptcy petition on March 28, 1996. The debtor is presumed insolvent on and during the ninety days immediately preceding the date of the filing of the petition. 11 U.S.C. § 547(f). That presumption has not been rebutted by the Bank.

The last element of a preferential transfer requires the trustee to demonstrate that the transfer enabled the Bank to receive more than it would have received in a Chapter 7 distribution if the transfer had not occurred. The Bank contends that the dragnet clause contained in the Mortgage is valid and enforceable as to all categories of the debtors' debt. Thus, the Bank claims it did not receive more than it would have received in the debtors' Chapter 7 distribution if the transfer had not occurred. If the creditor is fully secured, the funds it received during the preference period are not preferences. If the debts to which the funds were applied were not secured, however, the allocations were preferences.

### 2. *Dragnet Clause*

The validity of the dragnet clause is determined under Wisconsin law. The state supreme court has recognized that a security agreement can secure antecedent or subsequent obligations, and the lien will attach at the time of the security agreement. *Capocasa v. First Nat'l Bank,* 36 Wis.2d 714, 154 N.W.2d 271 (1967). Future advance provisions, however, will be enforced only to the extent that the future liabilities sought to be secured were within the contemplation of the parties. *John Miller Supply Co. v. Western State Bank,* 55 Wis.2d 385, 392, 199 N.W.2d 161, 164 (1972) (Uniform Commercial Code case). What was contemplated by the parties must first be determined from a reasonable reading of the language of the agreement. *Id.* The supreme court has given further guidance:

> "The 'other indebtedness' secured by a mortgage may be either antecedent or sub-

sequent. Where it is antecedent it must be identified in clear terms, and where it is subsequent, it must be of the same class as the primary obligation secured by the instrument and so related to it that the consent of the debtor to its inclusion may be inferred."

*John Miller Supply,* 55 Wis.2d at 394, 199 N.W.2d at 165 (quoting 2 Gilmore, *Security Interests in Personal Property,* § 35.2). Stated another way, "[t]he similarity between future debts contemplated and future debts incurred is what a court scrutinizes when analyzing subsequent debt cases." *Schmitz v. Grudzinski,* 141 Wis.2d 867, 875, 416 N.W.2d 639, 642 (Ct.App.1987). Thus, the antecedent liability of the debtors must be stated in clear terms and the subsequent liabilities must either relate to a similar course of financing or fall within the expressed intent of the parties. *John Miller Supply,* 55 Wis.2d at 394–95, 199 N.W.2d at 165.

Courts have been concerned about the potential for abuse if the future debts are unrelated to the current ones:

The original basis for their concern was the ingenious but perhaps devious practice of some creditors who, having obtained a future-advances clause from the debtor, would then go around to the debtor's unsecured creditors, purchase their rights, and then argue that the purchases were future advances to the debtor and therefore secured. Not wanting to encumber his property further, or risk losing otherwise exempt property in bankruptcy ..., the debtor might have sought future credit only from lenders willing to lend on an unsecured basis, and the future-advances clause would foil him.

*Matter of Kazmierczak,* 24 F.3d 1020, 1021 (7th Cir.1994) (citation omitted). Such a scheme is not present in this case.

#### A. *Antecedent Debt*

 The MasterCard credit card obligation was an antecedent debt, so it must be identified in clear terms. The parties admit in their stipulated facts that the MasterCard documentation does not contain, in general, any language regarding a security interest,

or in particular, any language indicating that the MasterCard is secured by the debtors' Mortgage. Additionally, the Mortgage does not contain any language specifically referring to the MasterCard obligations. In fact, the Mortgage's dragnet provisions only refer to securing "any *additional* sums which are in the *future* loaned by Lender to any Mortgagor." (Real Estate Mortgage ¶ 5, Exhibit 1) (emphasis added). The burden of specifically proving the indebtedness secured by the mortgage is upon the mortgagee. *Capocasa,* 36 Wis.2d at 720, 154 N.W.2d at 274. As stated above, any ambiguity must be resolved against the mortgagee. *Id.* Although the MasterCard line of credit was ongoing, the underlying contract pursuant to which all advances were made was in existence at the time the parties entered into the Real Estate Mortgage Agreement. The parties could easily have stated in clear terms that the MasterCard credit card was secured by the Mortgage, but failed to do so.

The Wisconsin Court of Appeals has further noted:

Debts antecedent and debts subsequent to dragnet clauses in security devices require different analyses. In both cases, the policy is "no big surprises." However, in antecedent debt cases, the parties have knowledge of the debt and the security, and the question is whether the two are so wholly unrelated or unclear that as a matter of public policy a court will refuse to enforce the clause as to specific security.

*Schmitz,* 141 Wis.2d at 874–75, 416 N.W.2d at 642.

This court concludes that the MasterCard debt and the Mortgage are unrelated as neither included a reference to the other. The debtors' MasterCard credit card is not secured by the debtor's real estate.

#### B. *Subsequent Debt*

 In order to evaluate the subsequent debts, the court must look to the documents in question to determine the expressed intent of the parties. Paragraph 5 of the debtor's Mortgage states that a future consumer advance is secured by the Mortgage only if the advance documents contain language agreeing that such advance is to be secured by the

Mortgage.[2] This clause must also be strictly construed against the party drafting the instrument. *See Capocasa*, 36 Wis.2d at 720, 154 N.W.2d at 274–75.

Both reserve accounts provided the following:

> The Loan Balance and Finance Charges are or may be secured by a lien upon any credit balances or other money now or hereafter owed to Borrower by Bank, and by all security agreements of Borrower now or hereafter held or acquired by Bank.

(Ready Reserve Account Agreement, Exhibits 4 & 5). This provision contains adequate language agreeing that the Ready Reserve Accounts are to be secured by the Mortgage already in existence. Consequently, the dragnet clause in the Mortgage includes the Ready Reserve Accounts.

■ For the subsequent debt to be secured by an earlier security agreement, it must also be "of the same class as the primary obligation secured by the instrument and so related to it that the consent of the debtor to its inclusion may be inferred." *John Miller Supply*, 55 Wis.2d at 394, 199 N.W.2d at 165. Wisconsin courts have provided little guidance as to what is considered a "similar course of financing," *id.*, for the purposes of upholding dragnet provisions. In *Capocasa*, the court pointed out various types of advance clauses which can serve a socially and economically desirable purpose: construction or improvement loans with instalments to be advanced as the work progresses; mortgages by way of indemnity for prospective indorsements, guarantees, and accommodations of commercial paper to be issued by the mortgagor; fluctuating current balances under lines of credit established with the mortgagee; and as security for a bond issue, or a series of issues. *Capocasa*, 36 Wis.2d at 719 n. 1, 154 N.W.2d at 273 n. 1. This list of circumstances in which dragnet clauses are accepted is, of course, not exhaustive.

A Tennessee bankruptcy court has considered the "same class" test and held that a future advance clause in a consumer loan instrument could not extend to cover subsequent indebtedness incurred by the debtor for a primarily business purpose unless there was clear evidence establishing a contrary intent. *In re Johnson*, 9 B.R. 713, 715–17 (Bankr.M.D.Tenn.1981). The *Johnson* court determined that the "same class" test should only be applied to "the extent necessary to distinguish between consumer and business transactions." *Id.* at 716. In fact, the court recognized that a future advance clause in a consumer loan instrument would cover any "future indebtedness of a personal, family, or household nature." *Id.* The classification test was later repudiated by the Tennessee legislature; however, the court's analysis of what constitutes the "same class" is still sound. *See In re Phillips*, 161 B.R. 824, 827 (Bankr.W.D.Mo.1993). The *Phillips* court applied the *Johnson* standards and determined that because a mobile home loan and Visa account were consumer debts, they were of the "same class." The *Phillips* court also found that the two loan documents were not at odds with each other. *Id.*

■ The classification analysis comports with the language in the debtors' Mortgage, which states that future loans "primarily for personal, family or household purposes" may be secured by the Mortgage. The original loan was given to procure a house and vacant lot—a personal, family or household purpose. The obligations were incurred by the debtors, as individuals. There is no indication in any of the documentation that the reserve accounts had a business purpose, although the debtors' bankruptcy schedules reflect that Mr. Hill was self-employed as a carpenter. Thus, the reserve accounts have been incurred *primarily* for the debtors'· own personal and family use or for support of the

---

2. "This Mortgage secures prompt payment to Lender of ... (b) to the extent not prohibited by the Wisconsin Consumer Act (i) any additional sums which are in the future loaned by Lender to any Mortgagor, to any Mortgagor and another or to another guaranteed or endorsed by any Mortgagor primarily for personal, family, or household purpose and agreed in documents evidencing the transaction to be secured by this Mortgage, and (ii) all other additional sums which are in the future loaned by Lender to any Mortgagor, to any Mortgagor and another or to another guaranteed or endorsed by any Mortgagor...." (Real Estate Mortgage ¶ 5, Exhibit 1).

household. Because the debtors' Mortgage and Ready Reserve Accounts are of the same class, inclusion of the reserve accounts in the Mortgage's dragnet provision may be inferred. *See John Miller Supply,* 55 Wis.2d at 394, 199 N.W.2d at 165. Therefore, the Bank's application of $4,935.62 to the debtors' Ready Reserve Accounts was not an avoidable preference.

■ The debtor's vehicle note also contained the following provision:

> Lender may, at any time after the occurrence of an event of default and notice and opportunity to cure, if required by § 425.105, Wis. Stats., set-off any amount unpaid on the Obligations against any deposit balances I may at any time have with Lender, or other money now or hereafter owed me by Lender. This Agreement is also secured (to the extent not prohibited by the Wisconsin Consumer Act) by all existing and future security agreements between Lender and any of us, between Lender and any guarantor or indorser of this Agreement, and between Lender and any other person providing collateral security for my Obligations. However, this Agreement is not secured by any principal dwelling unless described in this Agreement.

(Consumer Simple Interest Note and Chattel Security Agreement § 8(a), Exhibit 7). The debtor's vehicle loan was secured by the vehicle, so the Bank's application of $612.74 toward the vehicle loan was not a preference.

### C. *Wisconsin Consumer Act*

■ The trustee contends that the Wisconsin Consumer Act prohibits the bank from taking a security interest in the debtors' real property if the obligation is less than $1,000. The Act provides, in relevant part, the following:

> With respect to a consumer loan, in addition to the limitations on security interests required by 12 CFR 227.13(d), 12 CFR 535.2(a)(4), or 16 CFR 444.2(a)(4), if any, a lender may not take a security interest, other than a purchase money security interest, in:
>
> (b) Real property if the obligation secured is less than $1,000.00.

Wis. Stat. § 422.417(3). The trustee contends that each time the debtors used their credit card or Ready Reserve Account Agreements the transaction was probably in an amount less than $1,000. The Wisconsin Consumer Act would thus prohibit the Bank from taking a security interest in real property for the Ready Reserve Account and MasterCard credit card. Because the court has previously determined that the MasterCard debt is not secured by the real estate, only the reserve account will be analyzed.

The Bank claims that § 422.417(3) prohibits a security interest in real property if the obligation, *as a whole,* is less than $1,000. Thus, even if individual advances were less than $1,000, if the aggregate obligation is greater than $1,000, it may be secured by real property. The Bank cites the interpretation of the statute by the Office of Commissioner of Banking (now the Department of Financial Institutions) for support:

> According to Sec. 422.417(3)(b), Wis. Stats., a creditor in a consumer loan may not take a security interest in real property if the obligation secured is less than $1,000.
>
> In applying this section of the act to extensions of open end credit, this office has always taken the position that the customer's obligation is the amount owed by the customer to the creditor. As a result, in an open end credit plan the customer's obligation could be greater than or less than $1,000 at any particular time.
>
> The determination as to whether the customer's obligation is $1,000 or more should be made at the time the creditor seeks to enforce the security agreement since that is the crucial juncture with respect to this issue. Consequently, for purposes of determining whether the customer's obligation is secured by an interest in real estate, the creditor must look at the customer's balance at the time an action to enforce the security interest is commenced. The obligation may, of course, include accrued finance charges and other charges permitted by the Act. However, they must be charges which are due at the time the action is commenced as distinguished from charges which may become

due in connection with enforcement of the customer's obligation. . . .

(9/22/82 Letter from Attorney Robert A. Patrick, Office of Commission of Banking).

This court accepts the interpretation set forth by the Office of Commissioner of Banking. Because the debtors' total obligation on their Ready Reserve Accounts was greater than $1,000, the Wisconsin Consumer Act does not prohibit it from being secured by real property.

## CONCLUSION

Based upon the above analysis, the Bank's application of the proceeds from the sale of the vacant lot toward the debtors' Master-Card debt was a preference and may be avoided by the Trustee. The Bank's applications of the proceeds toward the Ready Reserve Accounts and Vehicle Note were not preferences and may not be avoided by the Trustee. Additionally, this court agrees with the parties that the Bank's applications of the proceeds toward the debtors' delinquent real estate taxes and Mortgage Note were not preferences. A separate order consistent with this decision will be entered.